Victor LUNA, Appellant,

v.

Charles BLACK, Warden, Appellee.

No. 85–1334.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 2, 1985.
Decided Sept. 6, 1985.

Victor Luna, pro se.

Sharon M. Lindgren, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

Victor Luna, a Nebraska state prisoner, appeals pro se the district court's[1] dismissal of his petition under 28 U.S.C. § 2254 for a writ of habeas corpus. He argues the district court erred in dismissing his petition because (1) prosecutorial vindictiveness motivated the filing of an habitual criminal charge after Luna refused to plead guilty; (2) the record at the habitual criminal hearing failed to affirmatively show that he was represented by counsel or waived counsel at the time of his prior convictions; and (3) the state trial court failed to appoint an interpreter or hold a hearing to determine whether Luna, a Honduran national, had sufficient command of the English language to intelligently participate in his defense.

After a jury convicted Luna of two counts of assault, the state trial court held a hearing, found Luna to be an habitual criminal, and sentenced him to eight months' imprisonment for third degree assault and to a term of from twenty to thirty years' imprisonment for first degree assault as enhanced by the habitual criminal determination. The Nebraska Supreme Court affirmed Luna's convictions on direct appeal, *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982), and summarily affirmed without opinion the denial of Luna's subsequent motion for post-conviction relief. Luna then filed this federal habeas corpus action.

Luna entered a plea of not guilty to the original information charging first degree assault and second degree assault. During a pretrial exchange with the state trial court and his appointed attorney, Luna complained that his attorney had not told him what his sentence would be if he pleaded guilty. Defense counsel stated that he had advised his client of the possible penalties and also of the fact that the prosecution would file an additional charge under the habitual criminal statute if Luna proceeded to trial. Luna refused to plead guilty and the state filed an amended information charging him with being an habitual criminal.

Luna contends that the filing of the amended information punished him for exercising his right to a jury trial and constituted prosecutorial vindictiveness violative of his right to due process. Luna alleges that the record on its face shows actual vindictiveness.

We agree with the district court that the record merely shows Luna knew when he chose to persist in his plea of not guilty that the habitual criminal charge would ensue. There is no due process violation when a defendant is openly presented with the "unpleasant alternatives of for-

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

going trial or facing charges on which he was plainly subject to prosecution...." *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). Vindictiveness is not shown by evidence that a pretrial decision to modify charges was influenced by the prosecutor's hope to obtain a guilty plea. *See United States v. Goodwin,* 457 U.S. 368, 380 n. 12, 102 S.Ct. 2485, 2492 n. 12, 73 L.Ed.2d 74 (1982). Luna has presented no objective evidence "that the prosecutor's charging decision was motivated by a desire to punish him" for exercising his legal rights. *Id.* at 384, 102 S.Ct. at 2494. Absent specific factual allegations showing actual vindictiveness, this claim was properly dismissed.

Luna next contends that records of prior convictions in Idaho and Oregon which were introduced at the habitual criminal hearing failed to affirmatively show representation by, or valid waiver of, counsel at all critical stages of those prior proceedings, and that such evidence cannot be used as a basis for enhancing punishment.

■ Luna did not object to the evidence on this ground at the habitual criminal hearing.[2] He therefore waived the issue and the Nebraska Supreme Court would not have reviewed the claim even if Luna had presented it. *See State v. Cole,* 207 Neb. 318, 298 N.W.2d 776, 778 (1980). We agree with the state that such a procedural waiver bars Luna from raising the issue in a federal habeas corpus proceeding unless he shows cause for and prejudice from the procedural default. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

While Luna has not expressly stated any cause for the procedural default, allega-tions in the habeas petition could perhaps be liberally construed to suggest the type of ineffective assistance of counsel[3] which "may provide cause for a petitioner's failure to comply with a state procedural rule." *Howard v. Wyrick,* 720 F.2d 993, 995 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1715, 80 L.Ed.2d 187 (1984). But even assuming that cause for the procedural default lay in defense counsel's deficient performance, we believe Luna has not established prejudice from the default.

■ Nebraska law provides that, at an habitual criminal hearing, "a duly authenticated copy of the former judgment and commitment ... shall be competent and prima facie evidence" of a prior conviction. Neb.Rev.Stat. § 29–2222 (1979 Reissue). Where, however, records of prior convictions are silent as to whether counsel was present at a critical stage "and where the accused introduces evidence tending to show that he was not in fact so represented, the burden then shifts to the state to prove ... that the accused was represented." *Losieau v. Sigler,* 406 F.2d 795, 803 (8th Cir.), *cert. denied,* 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452 (1969). *See also State v. Smith,* 213 Neb. 446, 329 N.W.2d 564 (1983) (where record is silent, state bears burden of proving opportunity for counsel at time of prior convictions).

■ The records in this case were not silent. The evidence introduced at the habitual criminal hearing revealed that Luna appeared with his attorney for pronouncement of judgment and sentence on the Idaho charge, and that he was represented by an attorney at arraignment and sentencing and in his notice of appeal on the Oregon

---

**2.** Luna's counsel objected to admission of the records on the ground of relevancy in that neither of the previously convicted defendants used the name "Victor Luna." A fingerprint expert testified, however, that Luna's known prints matched the fingerprint cards from the prior convictions, and the trial court implicitly overruled the objection. *State v. Luna,* 319 N.W.2d at 739–40.

**3.** As supporting facts for his claim of inadequate representation at trial and on appeal, Luna's petition states that his trial attorney "failed to make any defense investigation" and that his appeal attorney "ignored several very serious violations of petitioner's legal and constitutional rights...." As the magistrate's report noted, citing *Tinlin v. Parratt,* 680 F.2d 48 (8th Cir. 1982), defense counsel's failure to investigate the constitutional validity of prior convictions can, in certain situations, amount to ineffective assistance sufficient to warrant habeas relief where prejudice is shown.

charge. Furthermore, we note that Luna does not now allege that his prior convictions were in fact invalid because they were uncounseled at any stage. Without some indication that Luna was not represented at a critical stage in the prior proceedings, we think the record's affirmative showing of representation sufficiently proves, for enhancement purposes, that the convictions were valid. Thus, Luna has not demonstrated prejudice warranting habeas relief on this claim.

Luna's last contention is that the record fails to disclose that he, a Honduran national, understood English well enough to understand the proceedings and participate in his defense. He alleges that the state trial court violated his right to due process by failing to appoint an interpreter for him or to conduct a hearing sua sponte on the need for an interpreter when it became apparent that English was not Luna's native language.

Luna correctly asserts that an indigent defendant who has obvious difficulty with the language has a right to a court-appointed interpreter. When a trial court is "put on notice that there may be some significant language difficulty," the court should determine whether an interpreter is needed; the trial court has wide discretion in making that determination. *United States v. Carrion*, 488 F.2d 12, 14–15 (1st Cir.1973), *cert. denied*, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). On the other hand, where no request is made for an interpreter and the record shows no need for one in that the defendant has no difficulty in communicating, a trial court does not abuse its discretion by failing to appoint an interpreter. *United States v. Barrios*, 457 F.2d 680, 682 (9th Cir.1972) (overruled on other grounds by *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975)).

This was not a case where the defendant obviously neither spoke nor understood the English language, or, despite some limited ability, clearly had difficulty with the language. As the magistrate stated in his report:

In petitioner's case, the record indicates very little language difficulty on the basis of which the court could be said to be on notice and required to hold a hearing regarding an interpreter. The fact that the petitioner is a Honduran National does not itself establish difficulty with the English language. Aside from some syntactical errors, his testimony on the whole, including the portions quoted in petitioner's brief, appear to be very responsive and indicative of petitioner's ability to speak and understand English. Thus, contrary to the petitioner's assertion, I find the record indicative of his ability to understand the proceedings and intelligently participate in his defense. In such circumstances, the court's failure to hold a hearing to determine the need for an interpreter, or to ultimately appoint one, does not constitute a violation of any constitutional right warranting habeas relief.

The record amply supports the district court's conclusion that this final claim should be dismissed.

Accordingly, the judgment of the district court is affirmed.