STATE OF NEBRASKA, APPELLEE, V. GARY W. JOHNSON, APPELLANT.
449 N.W.2d 232

Filed December 22, 1989.    No. 89-169.

John Franklin Aman and Susan R. Tast for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

Following a plea of no contest, the defendant, Gary W. Johnson, was found guilty of second degree false imprisonment and was sentenced to 1 year's imprisonment in the county jail. He has appealed, claiming that he was denied due process of law when the county court allowed the county attorney to dismiss a misdemeanor charge and refile a felony charge arising from the same incident, when he and his witnesses were present and ready to proceed for trial on the misdemeanor complaint. The defendant further contends that the district court abused its discretion in denying him probation and in imposing an excessive sentence.

The defendant originally was charged with third degree assault, a Class I misdemeanor. He entered a plea of not guilty to this charge, and the case was set for trial in the county court for September 6, 1988.

On the morning of September 6, the State dismissed the complaint for third degree assault and filed an amended complaint for child abuse, a Class IV felony. At the hearing in the county court on September 6, the defendant objected to the dismissal of the misdemeanor charge, as he was ready for trial. This objection was overruled. The defendant waived preliminary hearing on the amended complaint and was bound over to district court for trial.

Pursuant to a plea agreement, an amended information was filed in district court, charging the defendant with second degree false imprisonment, a Class I misdemeanor, and on January 10, 1989, the defendant entered a plea of no contest to the amended information.

The defendant first contends that he was denied due process of law when the county attorney was allowed to dismiss the original misdemeanor charge and file a felony complaint. He argues that the action of the county attorney in dismissing the original misdemeanor charge and refiling a felony charge prior to trial was prompted solely by the defendant's exercising his right to a trial and demonstrated a reasonable likelihood of prosecutorial vindictiveness. The defendant claims that he was entitled to a presumption of prosecutorial vindictiveness under *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L.

Ed. 2d 74 (1982), and that his conviction and sentence should be vacated.

Questions of alleged prosecutorial vindictiveness in the pretrial setting were addressed by the U.S. Supreme Court in *United States v. Goodwin, supra*, and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).

The question presented in *Goodwin* was whether a presumption of vindictiveness should be applied to evaluate a prosecutor's pretrial response to the defendant's demand for a jury trial. In *Goodwin*, the defendant was charged with several misdemeanor and petty offenses, which were scheduled for trial before a federal magistrate. Goodwin fled the jurisdiction, was recaptured, and exercised his right to have the misdemeanor offenses tried by jury in district court. The case was transferred to another prosecutor, who reviewed the case and obtained a felony indictment. In reversing Goodwin's felony conviction, the U.S. Court of Appeals for the Fourth Circuit adopted a legal presumption that the prosecutor acted vindictively in seeking the felony indictment and held that the felony charge was barred, even absent proof of actual vindictiveness. The U.S. Supreme Court reversed, stating that the timing of the prosecutor's action "suggest[ed] that a presumption of vindictiveness is not warranted." 457 U.S. at 381.

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is

completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in [*Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)], the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

The nature of the right asserted by the respondent confirms that a presumption of vindictiveness is not warranted in this case. After initially expressing an interest in plea negotiation, respondent decided not to plead guilty and requested a trial by jury in District Court. In doing so, he forced the Government to bear the burdens and uncertainty of a trial. This Court in *Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified.

457 U.S. at 381-83.

In *Bordenkircher v. Hayes, supra*, the Court held that the due process clause of the 14th amendment did not prohibit a prosecutor from carrying out a threat, made during plea

negotiations, to bring habitual criminal charges against an accused who refused to plead guilty to the original charge of forgery. The defendant, Hayes, pled not guilty and was then charged and convicted as a habitual criminal. The Court held that the defendant's right to due process had not been violated by the use of the habitual criminal charge in an attempt to induce a guilty plea, so long as the defendant was free to accept or reject the prosecution's offer. *Id.*

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." . . . But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

. . . .

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." . . . It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

. . . In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was

[not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U. S. 448, 456. To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard" which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself.

(Citations omitted.) 434 U.S. at 363-65. See, also, *Luna v. Black*, 772 F.2d 448, 449-50 (8th Cir. 1985):

There is no due process violation when a defendant is openly presented with the "unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution. . . ." *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). Vindictiveness is not shown by evidence that a pretrial decision to modify charges was influenced by the prosecutor's hope to obtain a guilty plea. *See United States v. Goodwin*, 457 U.S. 368, 380 n. 12, 102 S.Ct. 2485, 2492 n. 12, 73 L.Ed.2d 74 (1982).

In *State v. Willett*, 233 Neb. 243, 247, 444 N.W.2d 672, 675 (1989), we said, "When more than one statute prohibits criminal conduct, a prosecutor may select any violated statute as the basis for prosecuting a defendant so long as the prosecutor's selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

The facts in this case do not give rise to a presumption of prosecutorial vindictiveness, and the defendant has not proven actual vindictiveness. See *Luna v. Black, supra*. In any event, the defendant entered a plea of no contest to the amended information and does not contest the validity of his plea. A plea of no contest is equivalent to a plea of guilty for convicting and sentencing a defendant and waives every defense to the charge, whether the defense is procedural, statutory, or constitutional, except the defense that the information or complaint is insufficient to charge an offense. *State v. Kitt*, 232 Neb. 237, 440 N.W.2d 234 (1989). His assignment of error is without merit.

The defendant further contends that the district court abused its discretion in denying him probation and in imposing an excessive sentence. An order denying probation and a sentence imposed within the statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Byrd*, 231 Neb. 231, 435 N.W.2d 898 (1989); *State v. Jenson*, 232 Neb. 403, 440 N.W.2d 686 (1989).

At the arraignment, the factual basis for the plea was supplied by the deputy county attorney as follows:

MR. COLBORN: The State's evidence would be that on July 12, 1988, Tommy Cunningham-Cook reports that while at 5230 Ervin here in Lincoln, Lancaster County, Nebraska, which is where he resided with his mother, Joanne Cook, and the defendant, Gary Johnson, that he had gotten into trouble for going through the defendant's personal effects, apparently looking at some magazine that he wasn't to be looking at; that the defendant did discipline him and did strike Tommy Cook on the buttocks very hard, believed to be with a fist, leaving bruising on the child's buttocks. The child also reported that defendant picked him up by the hair and had also picked him up under the arms and shaken him and thrown him against the wall. All these events occurring in Lancaster County, Nebraska. There was — in addition to the bruising on the buttocks, there was a scratch mark on the child's underneath his arms or armpit area.

THE COURT: Ms. Tast, is there any challenge to the sufficiency of the factual basis?

MS. TAST: No, Your Honor.

The presentence report shows that at the time of the offense, the victim, who was 10 years of age, and his mother were living in the defendant's home. According to the victim's mother, the defendant "lured" the victim into going downstairs with him, where the assault then occurred. According to her, she "started hearing hitting on my son, you could hear my son being thrown against the wall" and the defendant "telling my son not to cry or make any noises, be quiet." The victim reported that in addition to his being struck on the buttocks with a closed hand, the defendant struck him on the side of the face, held him off

the ground by his hair, shook him, and threw him against the wall.

The mother stated that she was afraid to intervene because she thought the defendant "would take it out on my son more." She reported that in the past the defendant had held her down on the floor and hit her upper arms with his fist. She also reported that the defendant's ex-wife had told her that she had been beaten by the defendant more than once.

The victim's mother reported the assault to the police on the following day.

The police report states that the victim's buttocks showed "rather extensive bruising, certainly bruising that would not occur with a normal simple spanking."

In sentencing the defendant to 1 year's imprisonment, the maximum sentence for a Class I misdemeanor, the trial court noted that the defendant had a lengthy traffic record, as well as convictions for assault and disturbing the peace, and that "[t]his very unfortunate incident involved a six-foot, 210-pound, 44-year-old man striking a little boy and causing not only physical injury to him, but emotional trauma." The court concluded that a lesser sentence would depreciate the seriousness of the offense and promote disrespect for the law.

The presentence report shows that the defendant was convicted of 18 traffic offenses between 1960 and 1986. In 1986, the defendant was charged with third degree assault as a result of an incident involving his ex-wife. This matter was dismissed to pretrial diversion, but the diversion program was terminated when the defendant was arrested on July 4, 1987. Pursuant to a plea agreement, the assault charge was not refiled, and the defendant was convicted of disturbing the peace in connection with the July 4 incident. In 1988, the defendant was convicted of assaulting the victim's mother.

The record shows that the trial court considered the nature and circumstances of the offense and the history, character, and condition of the defendant. The trial court did not abuse its discretion in denying the defendant probation and imposing the maximum sentence.

The judgment of the district court is affirmed.

AFFIRMED.