STATE OF NEBRASKA, APPELLEE, V. WILLIAM M. MORRISON,
APPELLANT.

500 N.W.2d 547

Filed May 21, 1993.    No. S-91-977.

Daniel W. Ryberg for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

The State of Nebraska contends that the Nebraska Court of Appeals in *State v. Morrison*, 1 NCA 2262 (1992), erred in holding that evidence obtained pursuant to a no-knock search warrant should have been suppressed by the district court for Douglas County. Further review was granted by this court.

We agree with the State's position, reverse the judgment of the Court of Appeals, and remand the cause with direction to reinstate William M. Morrison's convictions and sentences.

Morrison was convicted by a district court jury of unlawful possession with intent to deliver LSD (lysergic acid diethylamide) and with unlawful possession of a controlled substance, psilocybin. He was sentenced to not less than 3 nor more than 5 years in prison for possession with intent to deliver LSD, and to not less than 1 1/2 nor more than 5 years in prison

for possession of a controlled substance, the sentences to run concurrently.

## FACTS

Evidence adduced at a pretrial suppression hearing reflects that on March 26, 1991, Gerald Vajgert, a U.S. postal inspector, removed an Express Mail package addressed to William Morrison from the mail stream. Based upon his training and experience in detecting and intercepting packages containing illegal controlled substances, Vajgert withheld the package from the mail stream because (1) the package was from a known "source state" for drugs, i.e., California; (2) the package was going from an individual to an individual; (3) the labels on the package were handwritten; and (4) the ZIP Code on the return address differed from the ZIP Code of the mailing post office.

Vajgert arranged for the package to be "presented" to "Bush," a trained and experienced drug detection dog from the Omaha Police Division (OPD). Bush found where the package was hidden and started barking, scratching, and biting, which indicated the presence of contraband. After obtaining a federal warrant to search the package, Vajgert opened the package and discovered it contained approximately 2,064 hits of LSD. Vajgert described the LSD as being on 3- by 3-inch-square sheets of absorbent paper with 100 hits to the sheet.

Following this discovery, Vajgert contacted OPD's narcotics division and arranged a controlled delivery of the package. In preparation for delivery of the package to Morrison, OPD Officer Stephen Sanchelli removed from the package all but 200 hits of LSD. He testified that this action was taken so that if the drugs got away from the officers, as some had in the past, a lesser amount of controlled substances would "hit the street." Sanchelli stated that even if the 200 hits were flushed away, there were still approximately 1,800 hits preserved.

On March 27, 1991, Sanchelli applied to a Douglas County Court judge for a warrant to search Morrison's residence based on the findings during the search of the package. In his affidavit, Sanchelli stated that the "package containing the 2,064 hits of LSD will be delivered" to Morrison at his address in Omaha. A no-knock search warrant was requested because,

as stated in the affidavit, "[o]fficers know through past experience that if they were to announce themselves or their purpose that evidence being sought could be easily destroyed by flushing it down the toilet or sink." The Douglas County Court judge issued the requested warrant, authorizing officers to "enter [Morrison's] premises . . . without knocking or announcing their authority . . . ."

Shortly after a postal inspector delivered the package to Morrison, officers kicked in or rammed the door to Morrison's apartment. Morrison was arrested and charged with possession of a controlled substance, LSD, with intent to deliver. Morrison was also charged with possession of psilocybin, a controlled substance which was found by police in Morrison's apartment when police searched it. Based solely on his objection relating to the factors used by Vajgert to intercept suspicious packages, Morrison filed a motion to suppress all physical evidence seized by officers and all statements made by Morrison to law enforcement officers. After an evidentiary hearing, the motion was overruled. In his motion to suppress, Morrison made no complaint regarding the no-knock search warrant issued by the Douglas County Court judge.

Following a jury trial, Morrison was found guilty on both counts with which he was charged, and he was subsequently sentenced.

Morrison appealed his convictions to the Court of Appeals, claiming that the trial court erred in (1) overruling Morrison's motion to suppress evidence, (2) failing to permit Morrison to examine the prosecuting attorney on her vindictiveness and in permitting amendment of the information, (3) permitting hearsay testimony, and (4) overruling Morrison's motion for a mistrial based on prosecutorial misconduct. The Court of Appeals reversed Morrison's convictions after determining that service of the search warrant by a no-knock entry was improper under the circumstances of this case and that the evidence obtained thereby should have been suppressed. The Court of Appeals stated that the inference to be drawn from Sanchelli's affidavit, i.e., that all 2,064 hits of LSD were to be delivered to Morrison and were at risk of ready destruction, was misleading. The court reasoned that issuance of a no-knock search warrant

would have been unlikely had the issuing judge been aware that most of the evidence had already been detained at police headquarters and half of the remaining evidence was taped to the inside of the package. The Court of Appeals concluded that the district court erred in overruling the motion to suppress evidence seized following the service of the no-knock search warrant. We granted the State's petition for further review of the cause.

## MOTION TO SUPPRESS

At the suppression hearing, Morrison challenged the issuance of (1) the federal search warrant, objecting to the underlying basis for what he termed Vajgert's "profile" for suspicious packages and to the trustworthiness and credibility of the drug dog alert, and (2) the state search warrant on the grounds that there was no basis for inclusion of a no-knock provision. The Court of Appeals determined that there was probable cause to issue the federal search warrant.

A search warrant, to be valid, must be supported by an affidavit establishing probable cause, or reasonable suspicion founded on articulable facts. . . .

. . . .

The duty of an appellate court in determining whether probable cause existed at the time a search warrant was issued is to ensure that the magistrate had a substantial basis for concluding that probable cause did in fact exist.
. . . Moreover, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the underlying affidavit. . . . Evidence which emerges after the warrant is issued has no bearing on whether a warrant was validly issued.

(Citations omitted.) *State v. Utterback*, 240 Neb. 981, 984-85, 485 N.W.2d 760, 766-67 (1992).

### FEDERAL SEARCH WARRANT

Vajgert's affidavit for the federal search warrant established that he was a postal inspector trained and experienced in the investigation of the use of the Express Mail service for trafficking in narcotics and other controlled substances; that an

"Express Mail/Narcotics Profile" had been developed to detect the use of Express Mail for narcotics trafficking; that the package addressed to Morrison fit the profile and was suspicious for a number of specific reasons, including a fictitious return address in a known source state for drugs; and that Bush, a certified drug detection canine, alerted to the package, indicating the presence of a controlled substance. The affidavit also specifically explained that while under the control of his handler, Bush had correctly alerted to narcotics 106 out of 113 times and had correctly alerted 35 out of 40 times in response to requests from the postal inspection service for parcel presentations. A trial court could properly find, without being clearly wrong, that the information contained in Vajgert's affidavit constituted probable cause or reasonable suspicion founded on articulable facts for the issuance of a search warrant for the package.

Morrison's primary objection to the detention of the package centers around Vajgert's "profile" of a suspicious package. Morrison argues that there was no underlying basis for the criteria used by Vajgert. However, Vajgert testified extensively regarding his training and experience, through which he developed his criteria of suspicious packages. Vajgert explained that his duties as a U.S. postal inspector entail discovery of dangerous or controlled substances in the mails. His training included a 12-week basic postal inspector course and a course at the Express Mail Narcotics School, at which he was trained in detecting the use of the Express Mail service for the interstate trafficking of controlled substances. He stated that he specifically targets Express Mail because it has a guaranteed 24-hour delivery and because the majority of contraband cases nationally in the postal inspection service have been in the Express Mail service.

Vajgert stated that his knowledge of drugs and Express Mail was acquired through his training and experience. He testified that he has detained approximately 75 Express Mail packages, of which he searched 55 to 60. Vajgert stated that he detained the package addressed to Morrison because it fit the criteria for a suspicious package and that he then contacted Sanchelli and arranged for the package to be presented to Bush, the drug

detection dog.

In *United States v. Van Leeuwen*, 397 U.S. 249, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970), the sole issue on appeal was whether conditions were satisfied for detention and inspection of two packages deemed suspicious by a postal clerk who subsequently called police. The court found that the warrantless detention of the packages pending investigation was justified because of the nature and weight of the packages, the fictitious return address, and the defendant's foreign license plates. The court held that the detention of the packages did not fall within the Fourth Amendment proscription of unreasonable searches and seizures of " 'persons, houses, papers, and effects.' " 397 U.S. at 252. Despite a 29-hour delay between mailing and service of the search warrant on the packages, the Court stated that "[t]he significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained." 397 U.S. at 253.

The package addressed to Morrison was sent via Express Mail and was contracted to be delivered by noon on March 26, 1991. Vajgert pulled the package from the mail stream between 8 and 10 a.m. on March 26. A federal search warrant was obtained and executed on the package by 3:15 p.m. that day. Prior to obtaining the federal search warrant, the package was taken to the police impound lot for presentation to the drug detection dog. Before the federal search warrant was executed, delivery of the package was delayed only 3 hours 15 minutes from the expected time of delivery. As in *Van Leeuwen*, the detention in this case was justified based upon Vajgert's reasonable suspicion that the package contained contraband. The privacy of the package was not invaded until a federal search warrant had been obtained. See, also, *Garmon v. Foust*, 741 F.2d 1069 (8th Cir. 1984) (actions of police officer in detaining suspicious package which had been mailed to a university student and which package was in custody of the university was a seizure of the package, but did not violate Fourth Amendment).

Morrison also questions the validity of the presentation of the package to Bush. He claims that the canine sniff in this case

constituted a warrantless search. We disagree. In *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), the Court examined police use of a drug detection dog in the context of a search of a traveler's luggage at an airport. The Court stated that *while the Fourth Amendment protects a person's privacy interest in the contents of personal luggage, a canine sniff requires neither opening the luggage nor exposing noncontraband items*. The court emphasized the nonintrusive nature of a canine sniff and the limited disclosure to officers of the contents of the luggage.

In these respects, the canine sniff is *sui generis*. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a "search" within the meaning of the Fourth Amendment.

462 U.S. at 707. See, also, *U.S. v. Harvey*, 961 F.2d 1361 (8th Cir. 1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 238, 121 L. Ed. 2d 173. In Morrison's case, subjecting the package to a canine sniff was a nonintrusive method of verifying Vajgert's reasonable suspicion based upon articulable facts that the package contained contraband. It was not a "search" of the package within the meaning of the Fourth Amendment. Morrison's argument is without merit.

Morrison objects to the placement of the package for presentation in a drawer in which other drugs had been placed for presentation 7 to 10 times previously. Morrison complains that Bush could have been alerting to scent residue from other drugs which had been placed in the drawer in the past. Sanchelli acknowledged that in the past he had hidden drugs from Bush in a number of drawers at that location. However, Sanchelli testified that in this instance, Bush "didn't alert on those drawers. He went to the strongest odor, which was the LSD hidden in that one table drawer."

Morrison also argues that Bush was not certified in the

detection of LSD. Sanchelli testified at the suppression hearing that he had attended a 2-week course at the Rudy Drexler School for Dogs in Elkhart, Indiana, at which he learned to train drug detection dogs. He said that he was required to be recertified every year and that since his initial certification in 1988, he had been recertified three times. Sanchelli testified that he was a certified handler who knows how to train drug detection dogs and that he had certified Bush in detecting LSD.

Nonetheless, Morrison complains that Bush was not certified in detecting LSD by the Drexler school, but only by Sanchelli himself, and that Vajgert's affidavit was therefore misleading in its statement that Bush was "a certified drug detection canine from the Rudy Drexler School for Canines in Elkhart, IL [sic]." The record fails to disclose any evidence that a drug detection dog must be trained at the school or that Sanchelli was unqualified to certify Bush in detecting LSD. Furthermore, Bush had in fact been certified in a number of drugs at the Drexler school. At the time Vajgert prepared his affidavit for the federal search warrant, he suspected only that the package contained a controlled substance. That the substance later proved to be LSD, which evidence emerged after the warrant was issued, has no bearing on whether the warrant was validly issued. Considering the information and circumstances contained within the four corners of the affidavit, the trial judge was not clearly wrong in determining that the federal search warrant was properly issued.

## State Search Warrant

In his appeal to the Court of Appeals, Morrison argued, and the Court of Appeals agreed, that there were misleading omissions in the affidavit for the state search warrant because the affidavit stated that all 2,064 hits of LSD were to be delivered to Morrison's address, when in fact over 1,800 hits had been removed, and of the remaining 200 hits, 100 had been affixed to the inside of the package. Thus, Morrison argues that the Douglas County Court judge was misled by the statement in the affidavit that the drugs mailed to Morrison could be easily destroyed by flushing them down a toilet or sink.

A trial court's ruling on a motion to suppress will be upheld

on appeal unless the trial court's findings of fact are clearly erroneous. *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993). In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed the witnesses testifying in regard to such motion. *Id.* A defendant who seeks to suppress evidence obtained pursuant to a search warrant has the burden of establishing that the search warrant is invalid so that evidence secured thereby may be suppressed. *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). The role of an appellate court is to determine whether the affidavit used to obtain a search warrant, when supplemented by the omitted material, would provide a magistrate or judge with a substantial basis for concluding that probable cause existed for the issuance of the warrant. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992).

The suppression hearing record reflects that Morrison failed to meet his burden of proving that the search warrant was invalid. Sanchelli's affidavit requesting a state search warrant stated that "the Express Mail package containing the 2,064 hits of LSD will be delivered" to Morrison at his home address. At the suppression hearing, Sanchelli acknowledged that he assisted in the removal of 1,863 hits from the package and preserved those hits as evidence. Had this information, omitted from the affidavit, been presented to the magistrate, there would still have been probable cause to issue the search warrant based on the 200 hits of LSD delivered to Morrison. Whether there were 200 LSD hits or over 2,000 LSD hits in the package to be delivered is not crucial to the issuance of the state search warrant. Possession of either number of hits is illegal, and either amount would constitute circumstantial evidence of Morrison's intent to deliver the LSD. See *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992).

No evidence was presented at the suppression hearing that 100 hits were affixed to the inside of the package to prevent easy disposal of the drug. Implicit in the trial court's denial of the motion to suppress is its finding that Morrison could indeed have easily destroyed the 200 hits of LSD delivered to him. In fact, the Nebraska Supreme Court has taken judicial notice that

substances such as LSD may be easily and quickly disposed of by merely flushing them down a toilet or drain. *State v. Meyer*, 209 Neb. 757, 311 N.W.2d 520 (1981). Had Morrison destroyed the 200 hits, he could not have been charged with possession of LSD because he at no time possessed the 1,863 hits of LSD which had been removed by police. As previously stated, evidence that 100 LSD hits were taped to the inside of the package was not presented at the suppression hearing. By the time Morrison renewed his motion to suppress, evidence had been received, without objection, that when the police arrested Morrison minutes after the package was delivered, all 200 hits of LSD that had been in the Express Mail package were found in the pocket of the bathrobe Morrison was wearing. It is noted that the sheets containing 100 LSD hits each were absorbent and smaller than a square of toilet tissue. In view of this crucial evidence, it cannot be said that the trial court, as the finder of fact, was clearly wrong in denying Morrison's motion to suppress based on omissions from the affidavit.

Morrison also claims that a no-knock search warrant was unjustified because officers could have arrested Morrison at the door when the package was delivered and, thus, the manner of serving the warrant was a pretext for searching the entire premises. This argument is without merit. Officers had a search warrant which authorized them to search Morrison's apartment for "LSD . . . its derivatives and administering instruments whether homemade or manufactured, all monies used to conduct an illegal narcotics operation, items of venue such as letters, documents and keys which would identify persons residing at or in control of [Morrison's address]." Armed with a valid search warrant, officers did not need a pretext to search Morrison's residence. Furthermore, an arrest at Morrison's front door would have required either a lone officer acting in a potentially dangerous situation or a number of officers to be present when Morrison came to the door, which would have served to alert Morrison to the situation and lessen the chance that the door would be voluntarily and peacefully opened.

Morrison did not directly attack the validity of an "anticipatory" search warrant in his motion to suppress, nor at the suppression hearing or the trial. Nonetheless, on appeal, he

assails the validity of such a warrant.

This court has not addressed the question of the validity of an anticipatory search warrant, which is "one that is issued before the item to be seized has arrived at the place to be searched." *U.S. v. Tagbering*, 985 F.2d 946, 949 (8th Cir. 1993). In *Tagbering*, the U.S. Court of Appeals for the Eighth Circuit noted that at least six other circuits have upheld such warrants, and quoted with approval *U.S. v. Garcia*, 882 F.2d 699 (2d Cir. 1989), *cert. denied, Grant v. U.S.*, 493 U.S. 943, 110 S. Ct. 348, 107 L. Ed. 2d 336, which stated that " 'the fact that the contraband is not presently located at the place described in the warrant is immaterial, so long as there is probable cause to believe that it will be there when the search warrant is executed.' " 985 U.S. at 950. In this case, the district court was not clearly wrong in upholding the validity of the anticipatory search warrant. Morrison's argument is without merit.

Morrison's assignment of error that the trial court erred in overruling his motion to suppress is without merit.

## PROSECUTORIAL VINDICTIVENESS

Morrison assigns as error the refusal of the trial court to permit examination of the prosecutor on her "vindictiveness" in amending the information to add the charge of possession of psilocybin. Entered into evidence is a letter in which a plea offer is made from the prosecutor to Morrison's attorney, the substance of which is that the prosecutor will refrain from amending the information to include the psilocybin charge if Morrison agrees to plead guilty to the charge of unlawful possession of LSD with intent to deliver. Morrison apparently rejected the offer, and the prosecutor moved to amend the information during the suppression hearing. In effect, Morrison claims that the plea offer by the prosecutor was an attempt to dissuade him from going to trial and was ultimately a ploy designed to preclude him from preserving issues he had raised in the suppression hearing because "[s]uch preservation is difficult to do by simply submitting reports." Brief for appellant at 41.

In *State v. Johnson*, 234 Neb. 110, 449 N.W.2d 232 (1989), a defendant claimed that he was denied due process of law when

the county court allowed the county attorney to dismiss a misdemeanor charge and refile a felony charge arising from the same incident. The defendant filed a plea of no contest, but argued on appeal that the county attorney's actions demonstrated a reasonable likelihood of prosecutorial vindictiveness. In affirming the conviction, this court stated that

> "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'. . . It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty."

*Id.* at 114, 449 N.W.2d at 234-35 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)). The letter from the prosecutor to Morrison's attorney represented an attempt to persuade Morrison to plead guilty to a single charge rather than to be tried on two charges. The letter contained an offer which Morrison was free to accept or reject. The contents of the letter do not rise to the level of prosecutorial vindictiveness, and the trial court did not err in refusing Morrison the opportunity to examine the prosecutor on that issue or in allowing the information to be amended.

## HEARSAY OBJECTION

Morrison objects to Vajgert's trial testimony that the return address on the package was fictitious, assigning as error that the testimony was inadmissible hearsay. In the course of explaining his criteria for detaining a suspicious package, Vajgert testified that he customarily contacts the postal inspector's office in the source city to verify the return address. Vajgert stated that the return address on the package addressed to Morrison indicated that it was from "Amy Thomas" of "1357 Leavenworth, San

Francisco, California, 94102." Vajgert then testified, over Morrison's hearsay objection, that in this case when he contacted the inspector's office in San Francisco, "[t]hey indicated to me that there is a 1300 block on Leavenworth Street in San Francisco but the address 1357 does not exist on that block. And they also indicated that the carrier was not familiar with the name of . . . Amy Thomas."

In his brief, Morrison acknowledges that this evidence was offered "in order to show what actions Vajgert then took, and not for the truth of the matter." Brief for appellant at 43. By definition, such testimony is not hearsay. See Neb. Rev. Stat. § 27-801(3) (Reissue 1989). In any event, the admission of that testimony is harmless error beyond a reasonable doubt. The testimony was admitted to show officers' justification in obtaining a search warrant for the package. The testimony was not necessary to show that Morrison was guilty of possession of LSD with intent to deliver. Without that evidence, there was other, overwhelming evidence of Morrison's guilt, including the fact that Morrison accepted the package when it was delivered, opened it, removed the LSD hits, and had them in the pocket of the bathrobe he was wearing when the search warrant was executed. Further, the evidence reflects that Morrison told a police officer that he was selling LSD to support his own habit. He also said he would have sold LSD to his friends. There was testimony that the street value in Omaha of 2,000 LSD hits was between $8,000 and $14,000. From these statements and from the number of LSD hits in the Express Mail package, prior to or upon delivery, a jury could conclude beyond a reasonable doubt that Morrison received the controlled substances with the intent to deliver them. See *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). The evidence was uncontroverted that the psilocybin was found in Morrison's apartment. From all these uncontroverted facts, a jury could conclude beyond a reasonable doubt that Morrison was guilty as charged. Any error in admitting the challenged testimony was harmless beyond a reasonable doubt. Morrison's assignment of error is without merit.

## PROSECUTORIAL MISCONDUCT

Morrison moved for a mistrial after the fourth attempt by the State to elicit from witnesses a description of Morrison at the time of his arrest. Morrison argues that the prosecution was attempting to prejudice the jury by depicting Morrison as a "long hair." Brief for appellant at 45. Witnesses were not permitted to answer two of the four questions as to how Morrison's appearance at trial differed from his appearance at the time of his arrest. One of the arresting officers was twice asked at trial to describe Morrison at the time of his arrest. Included in the officer's description of Morrison after the final question was the fact that "[Morrison] had shoulder-length hair that was rubber-banded." Morrison then moved for a mistrial, which motion was overruled. The court did not admonish the jury to disregard what they had heard regarding Morrison's description.

The decision as to whether to grant a motion for mistrial is a matter within the discretion of the trial court, and such a ruling will be upheld absent an abuse of that discretion. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991).

> "A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. Egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of other incompetent matters are examples of occurrences which may constitute such events. . . . Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material." (Citations omitted.)
>
> . . . .
>
> The defendant must prove that the alleged error actually prejudiced him, rather than creating only the possibility of prejudice.

*Id.* at 673-74, 477 N.W.2d at 799.

Morrison has failed to show that the alleged errors regarding

Morrison's description actually prejudiced him. The evidence against Morrison was overwhelming. Comments regarding his long hair do not rise to a level of prejudice which would result in prevention of a fair trial.

Morrison also complains that there was a cumulative effect of inadmissible evidence which resulted in prejudicial error. In addition to evidence of Morrison's description, the evidence Morrison points to as being inadmissible includes (1) the evidence objected to by Morrison as being hearsay, which objection was without merit, and (2) questioning of a witness about Morrison's past criminal acts, the introduction of which evidence was not assigned as error by Morrison. When asked on cross-examination whether she had used LSD, the witness volunteered that she had used it one time with Morrison. Subsequently, on cross-examination she testified, without objection, that Morrison had given her the LSD she had used. This testimony was corroborative of his intent to deliver the LSD contained in the Express Mail package addressed to him. The trial court did not abuse its discretion in overruling Morrison's motion for a mistrial.

## CONCLUSION

The federal and state search warrants issued in this case were valid. The trial court was correct in denying Morrison's motion to suppress evidence obtained as a result of the warrants. Morrison's remaining assignments of error are meritless. Accordingly, we reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with direction to reinstate Morrison's convictions and sentences entered by the district court for Douglas County.

REVERSED AND REMANDED WITH DIRECTION.