Guy T. **FISHER**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Elmer T. **MORRIS**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Frank Alphonso **JAMES**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Nos. **97 Civ. 3250(MP), 97 Civ. 3785(MP),**
**97 Civ. 3784(MP) and SS 83**
**Cr.150(MP).**

United States District Court,
S.D. New York.

June 1, 1998.

Michael Young, New York City, for Petitioner Guy T. Fisher.

Elmer T. Morris, pro se.

Frank Alphonso James, pro se.

David Greenwald, Jonathan Etra, Asst. U.S. Atty's, New York City, for Respondent.

## MEMORANDUM OPINION AND ORDER

POLLACK, Senior District Judge.

Guy T. Fisher ("Fisher") and Elmer T. Morris ("Morris"), federal prisoners serving sentences dated January 12, 1984 for narcotics violations, respectively petition, pursuant to 28 U.S.C. § 2255, to vacate portions of the judgment on their sentences. Fisher's petition, dated May 5, 1997, will be granted only to the extent that his conviction on Count One of the Indictment pursuant to 21 U.S.C. § 846 for conspiracy to distribute narcotics will be vacated. Fisher's petition will in all other respects be denied. Morris' petition, dated May 23, 1997, will be denied in its entirety.

Frank Alphonso James ("James"), a federal prisoner serving a sentence dated January 12, 1984 for narcotics violations, who was tried together with Fisher and Morris, separately petitions pursuant to 28 U.S.C. § 2255 to vacate portions of the judgment on his sentence or, in the alternative, to be re-sentenced. James' petition, dated April 24, 1997, will be granted only to the extent that his conviction on Count One of the Indictment pursuant to 21 U.S.C. § 846 for conspiracy to distribute narcotics will be vacated. James' petition will, in all other respects, be denied.

## Background

On November 21, 1983, Petitioners, together with their five co-defendants, were convicted of a variety of offenses arising from their respective roles in the distribution of large quantities of illegal drugs in the New York City area over an eleven year period. Petitioners were associated in an extensive narcotics enterprise called the "Council," a governing body of drug dealers that purchased and sold pure heroin, as well as cocaine, PCP and marijuana. Each Council member had his own narcotics business, employing subordinates to dilute and distribute the narcotics within his particular territory. Over the course of its violent history, the Council was responsible for eight murders of suspected informants.

James and Fisher were active and prominent Council members. In fact, James was the organizing force behind the Council's formation in 1973. Morris, a former Tuckahoe, New York police officer, was not a member of the Council, but was responsible for providing the Council with information about suspected police informants and other assistance. Like their co-defendants, Fisher, James and Morris were convicted on all but one of the Counts in which they were named.

Fisher was convicted of the following: conspiracy to violate narcotics laws in violation of 21 U.S.C. § 846, for which no sentence was imposed; operating a continuing narcotics enterprise ("CCE") in violation of 21 U.S.C. § 848, for which he was sentenced to life imprisonment without parole and ordered to pay a $100,000 fine; possession with intent to distribute and distributing heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), for which he was sentenced to fifteen years imprisonment, to run concurrent with the CCE sentence, and ordered to pay a $25,000 fine; conspiracy to violate the racketeering laws in violation of 18 U.S.C. § 1962(d), for which he was sentenced to twenty years imprisonment, to run consecutive to the sentences imposed on the other Counts, and ordered to pay a $12,500 fine; and a substantive RICO crime in violation of 18 U.S.C. § 1962(c), for which he was sentenced to twenty years imprisonment, to run consecutive to the sentences imposed on the

other Counts, and ordered to pay a $12,500 fine. Fisher was found not guilty of 18 U.S.C. § 241, conspiracy to murder government witnesses.

Morris was convicted of the following: conspiracy to violate narcotics laws in violation of 21 U.S.C. § 846, for which he was sentenced to fifteen years imprisonment and ordered to pay a $25,000 fine; possession with intent to distribute and distributing heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), for which he was sentenced to fifteen years imprisonment, to run concurrent with the narcotics conspiracy sentence, and ordered to pay a $25,000 fine; unlawfully carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2), for which he was sentenced to one year of imprisonment, consecutive to the sentences imposed on the other Counts; conspiracy to violate the racketeering laws in violation of 18 U.S.C. § 1962(d), for which he was sentenced fifteen years imprisonment, to run consecutive to the other sentences imposed, and ordered to pay a $12,500 fine; and a substantive RICO crime in violation of 18 U.S.C. § 1962(c), for which he was sentenced to twenty years imprisonment, to run consecutive to the sentences imposed on the other Counts, and ordered to pay a $12,500 fine. Morris was found not guilty of 18 U.S .C. § 241, conspiracy to murder government witnesses.

James was convicted of the following: conspiracy to violate narcotics laws in violation of 21 U.S.C. § 846, for which no sentence was imposed; operating a continuing narcotics enterprise ("CCE") in violation of 21 U.S.C. § 848, for which he was sentenced to life imprisonment without parole and ordered to pay a $75,000 fine; possession with intent to distribute and distributing heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), for which he was sentenced to fifteen years imprisonment, to run concurrent with the CCE sentence, and ordered to pay a $25,000 fine; possession of cocaine in violation of 21 U.S.C. §§ 812, 844 for which he was sentenced to one year imprisonment;

to run concurrent with the CCE sentence, and ordered to pay a $5,000 fine; receipt of a firearm by a felon in violation of 21 U.S.C. § 844 and 18 U.S.C. § 922(h), (2) for which he was sentenced to five years imprisonment, to run consecutive to the sentences imposed on the other Counts, and ordered to pay a $5,000 fine; conspiracy to violate the racketeering laws in violation of 18 U.S.C. § 1962(d), for which he was sentenced to fifteen years imprisonment, to run consecutive to the sentences imposed on the other Counts, and ordered to pay a $12,500 fine; and a substantive RICO crime in violation of 18 U.S.C. § 1962(c), for which he was sentenced to twenty years imprisonment, to run consecutive to the sentences imposed on the other Counts, and ordered to pay a $12,500 fine. James was found not guilty of 18 U.S.C. § 241, conspiracy to murder government witnesses.

James, Fisher and Morris appealed their convictions and the convictions were unanimously affirmed. *United States v. Thomas,* 757 F.2d 1359 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985), 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 34 (1986).

### *Discussion*

#### *Fisher and Morris*

Fisher's and Morris' arguments in support of their petitions are as follows. First, Fisher argues that in light of the Supreme Court's decision in *Rutledge,* one of his two convictions, the § 846 (conspiracy) conviction or the § 848 (CCE) conviction, must be vacated; Fisher sets forth various theories by which the Supreme Court directive that one of these sentences be vacated may benefit him.[1] Second, Fisher argues that all of his convictions must be vacated, and that a new trial must be granted, because hearsay testimony introduced by the government under Rule 804(b)(3) was inadmissible. Third, Fisher asserts that he has discovered new evidence which demonstrates that he did not sell heroin.

1. Morris was not convicted of violating § 848. Fisher's Double Jeopardy arguments are therefore not relevant to him.

## A. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Supreme Court has held that the Double Jeopardy Clause consists of the following three separate constitutional protections: 1) protection against a second prosecution for the same offense after conviction; 2) protection against a second prosecution for the same offense after acquittal; and 3) protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). At issue in this petition is solely the third type of protection afforded by the Double Jeopardy Clause— protection against multiple punishments for the same offense.

■ It is common for multiple charges to arise from the same act or series of acts. However, courts may not impose a greater punishment than was intended by the legislature, and it is presumed that if multiple statutory provisions proscribe the "same offense," a legislature did not intend to impose multiple punishments for the offense. *Rutledge,* 517 U.S. at 297, 116 S.Ct. 1241; *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). To determine whether multiple prosecutions for a single act or series of acts violate the common law and constitutional protection against being punished twice for the same offense, courts apply the rule set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932): If "the same act or transaction constitutes a violation of two distinct statutory provision, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Id.; Rutledge,* 517 U.S. at 297, 116 S.Ct. 1241.

### 1. *Fisher's Narcotics Conspiracy Conviction.*

At the time of Fisher's sentencing, this Court applied the *Blockburger* test to Fisher's narcotics conspiracy and CCE convictions. As the Court was aware at that time, " § 846 is a lesser included offense of § 848 in the purest form." *United States v. Young,* 745 F.2d 733, 750 (2d Cir.1984) *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *see also Rutledge,* 517 U.S. at 306, 116 S.Ct. 1241 (resolving definitively that a "guilty verdict on a § 848 charge necessarily includes a finding that the defendants also participated in a conspiracy violative of § 846; conspiracy is therefore a lesser included offense of CCE."). Hence, the Court did not sentence Fisher to any period of incarceration, nor was any fine imposed, for the narcotics conspiracy conviction.

By not imposing any sentence on the narcotics conspiracy conviction, the Court followed the former practice in this Circuit in cases where a defendant was convicted of both § 846 and § 848. The former practice was to "combine the conviction for the lesser offense with the conviction on the greater offense, leaving the defendant convicted of two offenses but punished for only one." *United States v. Miller,* 116 F.3d 641 (2d Cir.1997); *see also United States v. Aiello,* 771 F.2d 621, 632–35 (2d Cir.1985). The advantage of this approach was to permit the court to retain the power to impose sentence upon the § 846 Count if the sentence or the conviction on the § 848 Count were ever overturned. *See United States v. Osorio Estrada,* 751 F.2d 128, 135 (2d Cir.1984) *cert. denied,* 474 U.S. 830, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985) (noting that, under this method, the conviction on the lesser Count was combined with the conviction on the greater Count, but was not merged out of existence).

In *Rutledge,* however, the Supreme Court prohibited this practice. The Court held that where a petitioner was sentenced to concurrent life sentences under both § 846 and § 848, one of the convictions must be vacated to avoid multiple punishments. *Rutledge,* 517 U.S. at 306, 116 S.Ct. 1241. The Court noted that, even though the prison sentence itself would remain unchanged, the second conviction has potential collateral consequences in terms of parole eligibility, recidivist sentencing, credibility, social stigma, and

special assessments. *Id.* at 301–02, 116 S.Ct. 1241. The Court specifically disapproved of the Second Circuit's practice of entering concurrent judgments, holding that in such cases one of the defendant's convictions must be vacated. *Id.* at 306, 116 S.Ct. 1241.

In *United States v. Rosario,* 111 F.3d 293, 301 (2d Cir.) *cert. denied,* —— U.S. ——, 118 S.Ct. 319, 139 L.Ed.2d 246 (1997), the Second Circuit faced the same situation that is presented here. The district court, following the former Second Circuit practice, had entered a written judgment on a conspiracy Count and a CCE Count, but pronounced a single sentence of life imprisonment. The Second Circuit, noting *Rutledge,* vacated the defendant's conviction on the lesser-included offense Count of conspiracy to distribute narcotics, and remanded for return of the $50 special assessment that was imposed upon it. The life sentence on the CCE conviction remained. *See also United States v. Miller,* 116 F.3d 641, 678 (2d Cir.1997) (holding that the narcotics conspiracy conviction should be vacated, while the greater CCE offense should remain intact); *Torres v. United States,* 1998 WL 82928 (S.D.N.Y. February 25, 1998) (same).

■ Fisher argues that, of the two convictions imposed upon him here, it is the CCE conviction that must be vacated. He asserts that, because CCE was charged as the second Count in the indictment, his conviction thereon after the entry of his conspiracy conviction amounted to a subsequent conviction for the same offense. However, Fisher's claim seeks protection against a second prosecution for the same offense after a conviction has already been entered. This type of Double Jeopardy protection is not at issue in this case, as it was in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Here, the multiple convictions arose from a single prosecution. The mere fact that the convictions were entered one after the other at the time the judgment was entered affords Fisher no protection whatever.

Alternatively, Fisher suggests that the defendant should be entitled to choose which of the sentences he would like to have vacated. Fisher would elect to vacate the CCE conviction, for which he was sentenced to life imprisonment, rather than the narcotics conspiracy conviction, for which no sentence was imposed. No legitimate support for this suggestion is found.

Fisher's conviction under 21 U.S.C. § 846 for conspiring to distribute narcotics will be vacated. His sentence for operating a continuing narcotics enterprise ("CCE") in violation of 21 U.S.C. § 848 remains intact.

### 2. *Fisher's RICO Enterprise Conviction.*

■ Fisher argues that *Rutledge* also requires vacatur of his conviction for conspiracy to violate the racketeering laws in violation of 18 U.S.C. § 1962(d), for which he was sentenced to twenty years imprisonment. However, RICO conspiracy is neither the same offense as CCE nor a lesser included offense of CCE. Offenses based on the same facts are not the "same" offenses for Double Jeopardy purposes if proof of each requires proof of some element that the other does not. *Blockburger,* 284 U.S. at 300, 52 S.Ct. 180. As stated by the Second Circuit in the direct appeal from the convictions in this case:

A Section 1962(d) conspiracy requires proof of the existence of an "enterprise" engaged in a "pattern of racketeering activity"; a Section 846 conspiracy does not. Section 846 requires proof of a narcotics related conspiracy; a RICO conspiracy charge is satisfied by proof of an agreement to commit a felony; no proof of conspiracy to commit narcotics violations is necessary. Thus, each offense requires proof of a fact that the other does not, and the *Blockburger* test is satisfied.

*United States v. Thomas,* 757 F.2d 1359, 1371 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). The Supreme Court holding in *Rutledge* does nothing to change this analysis. Fisher's conviction under 18 U.S.C. § 1962(d) stands.

### 3. *Fisher's Continuing Criminal Enterprise Conviction*

■ Next, Fisher argues that vacatur of his conspiracy conviction renders his CCE conviction invalid because the CCE Count

was predicated, in part, on the narcotics conspiracy Count. He argues that upon vacatur of the conspiracy conviction, the CCE conviction is not then based on the requisite three related narcotics violations needed to establish a "continuing series" of narcotics violations within the meaning of § 848. This argument was recently considered and rejected by the Second Circuit in *United States v. Miller*, 116 F.3d 641, 678 (2d Cir.1997). There, the Second Circuit held that *"Rutledge* did not purport to alter the principle that a narcotics conspiracy may properly be considered as a predicate to CCE," noting that, in *Rutledge*, the Supreme Court "remanded for dismissal of only one of the two convictions." *Id.*

Previously, the Second Circuit had observed that, with respect to the "continuing series of violations" required by the CCE statute,

> there is a consensus of authority that to establish a "series" the government must prove at least three felony violations. This does not necessarily mean, however, that the government must obtain *convictions* on a minimum of three felony violations to establish a continuing criminal enterprise. On a number of occasions, this court has affirmed § 848 convictions where the government apparently did not indict the defendant on three of the eligible predicate felonies in addition to the § 848 Count, or indicted the defendant on three or more of the eligible predicate felonies in addition to the § 848 Count but ultimately obtained convictions on two or less of them.

*United States v. Young,* 745 F.2d 733, 747 (2d Cir.1984) (citations omitted). The law of this Circuit therefore makes it quite clear that the vacatur of Fisher's conspiracy conviction in no way affects his CCE conviction.

### 4. *Re-sentencing.*

Fisher assumes that vacatur of his conspiracy conviction requires re-sentencing on the remaining Counts because the sentences imposed on those Counts might have been affected by his conviction on the conspiracy Count. *See United States v. Alvarez,* 860 F.2d 801, 818 (7th Cir.1988) *cert. denied,* 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989). This is an unwarranted assumption. The sentences imposed on the other Counts were reached independently and were not affected by the presence of the unsentenced conspiracy Count.

### B. *Hearsay Testimony.*

Fisher asserts that his convictions on all Counts must be vacated and that he must be granted a new trial because improper evidence was admitted at trial. At trial, the Government introduced an out-of-court statement made by one Ronald Spencer ("Spencer") to one detective Vincent Palazzato ("Palazzato"), in which Spencer identified Fisher as the person who had sold him one and one half grams of heroin. Fisher did not object to the admission of this evidence at trial or on direct appeal. He now claims that Mr. Palazzato's testimony consisted of inadmissible hearsay.

■ It is well settled that "[a] § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993). Therefore, "a procedural default of even a constitutional issue will bar review under section 2255 unless the petitioner can show cause excusing the default and actual prejudice resulting from the challenged error." *Napoli v. United States,* 32 F.3d 31, 36–37 (2d Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

■ In an attempt to demonstrate "cause," Fisher points to the Supreme Court decision in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), handed down several years after his appeal. There, the Supreme Court tightened the standards for admissibility of hearsay under the exception contained in the Federal Rule of Evidence 804(b)(3) for statements against penal interest, calling for redaction of all but those limited portions of the statements that are squarely against the declarant's penal interest.

Although *Williamson* might have provided a further basis for Fisher's objection to the hearsay at trial, then extant Second Circuit law provided ample basis for such an objection. Spencer's statements inculpating Fish-

er, made shortly after his arrest while he was in custody, were the sort of statements the Second Circuit had previously indicated were outside the exception for statements against penal interest. *See United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir.1980) (statement against penal interest inculpating another not admissible when made to curry favor with authorities). Thus, the unavailability of *Williamson* in 1983 did not prevent Fisher from objecting to the testimony at trial, nor from raising the claim he now raises some fifteen years later, on direct appeal. As noted by the Supreme Court, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Fisher's hearsay claim is therefore procedurally barred.

■ In an alternative attempt to overcome the "cause" hurdle, Fisher alleges that his trial and/or appellate counsel rendered ineffective assistance in failing to address the hearsay issue. However, even assuming that Fisher's counsel's performance in failing to object to the admission of Palazzato's testimony at trial and on appeal fell below "an objective standard of reasonableness," Fisher has not shown that "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Direct, independent, non-hearsay testimony implicating Fisher in the sale of the heroin had also come from two cooperating witnesses, Nicky Barnes and Walter Centano, both of whom had been told by Fisher himself that he sold Spencer the heroin. Thus, there was ample evidence presented at trial for the jury to have concluded, even absent Palazzato's testimony, that Fisher sold the heroin to Spencer.

### .C. *New Evidence.*

Lastly, Fisher asserts that he has newly discovered evidence demonstrating that he did not sell the heroin and submits two documents with his petition in support of his claim of innocence. One is an affidavit by Henry Hyman, a federal prisoner, who claims that Spencer told him in 1981 that Spencer deliberately lied when he told federal authorities that Fisher had sold him heroin. The other document is a request by Fisher to Dr. Attila Toth ("Toth") to release medical records which purport to document a visit by Fisher to Toth on the day Fisher sold heroin to Spencer.

■ With respect to the Hyman affidavit, the Second Circuit has cautioned that claims of witness recantation are to be viewed with "utmost suspicion." *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir.1987) (citation omitted). Moreover, "when a motion for a new trial is predicated entirely on an affidavit from a trial witness who recants her testimony, a trial judge can ordinarily deny it without a hearing." *Id.* at 51. Here, the recantation does not even come from Spencer himself, but from an affiant who claims to have heard Spencer recant some time ago while the two were incarcerated together.

The Court takes a dim view of this purported recantation. However, even if the Court were to accept the Hyman affidavit as true, there would be no basis for the Court to conclude that the "jury might have reached a different conclusion" concerning Fisher's guilt had Spencer's statements not been introduced. *United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1317 (2d Cir.1975). As noted above, independent, non-hearsay testimony implicating Fisher in the sale of the heroin had also come from two cooperating witnesses, both of whom had been told by Fisher himself that he sold Spencer the heroin. Additionally, Centano testified that Fisher had threatened to kill Spencer's family if Spencer testified against him. Even accepting Spencer's recantation as true, the Hyman affidavit affords Fisher no basis for relief.

As to Fisher's affidavit requesting records of a visit allegedly made to Toth on the day he sold heroin to Spencer, the Court finds this submission to be irrelevant.

*James*

James' arguments in support of his petition are as follows. First, James also argues that, in light of the Supreme Court's decision in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), his § 848 (CCE) conviction, for which he received a life sentence, must be vacated. Second, he argues that all of his convictions should be set aside because the Government purportedly failed to produce exculpatory and impeachment evidence. Third, he claims that errors in this Court's jury instructions require that his CCE conviction be vacated. Fourth, he seeks a. re-sentencing on the ground that he did not have adequate time to review his Presentence Report or the Government's sentencing memorandum. Finally, James argues that he received ineffective assistance of counsel at trial and at sentencing.

### A. *James' Narcotics Conspiracy Conviction.*

For the reasons noted above with respect to Petitioner Fisher, James' conviction under 21 U.S.C. § 846 for conspiring to distribute narcotics will be vacated. His sentence for operating a continuing narcotics enterprise ("CCE") in violation of 21 U.S.C. § 848 remains intact.

### B. *James' Other Claims.*

Once again, the Petitioner is attempting to raise claims that were not raised at trial or on direct appeal. Therefore, it must be shown that there is "cause" excusing the procedural default and that there was actual prejudice which resulted from the error. *Napoli v. United States,* 32 F.3d 31, 37 (2d Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995). James is unable to demonstrate why the claims he now raises could not have been raised on direct appeal and, therefore, is left only with a claim for ineffective assistance of counsel. All of James' other claims are procedurally barred.

### C. *Ineffective Assistance of Counsel.*

James asserts that his counsel rendered ineffective assistance in that a) he failed to obtain all of the records from the previous trial of an accomplice witness, Nicky Barnes; b) failed to object to the jury instructions on the CCE Count; and c) failed to secure more time for James to review the Presentence Report and the Government's sentencing memorandum. To prevail on these claims, James must demonstrate that his counsel's alleged errors caused his representation to fall below "an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington,* 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ To satisfy the first prong of *Strickland,* a defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. The "benchmark" for determining a claim of ineffectiveness is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. Moreover, in evaluating a claim of ineffectiveness, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (*quoting Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Here, there is no doubt that counsel's actions were at all times well within the "wide range of professional assistance" James was entitled to receive.

■ With respect to counsel's failure to secure all of the records from the previous trial of Nicky Barnes, trial counsel sought the production of the records of the Barnes investigation and trial, but the Court denied his request. With respect to counsel's failure to object to the jury instructions on the CCE Count, James has not shown that the Court's instruction was in any way improper; thus, failure to object to such instructions cannot be deemed attorney error. With respect to counsel's failure to secure more time for James to review the Presentence Report and the Government's sentencing memorandum, the record of the proceedings make clear

that trial counsel pressed for as much time as possible.

Even if the Court were to find that James' counsel's actions fell below an objective standard of reasonableness, James has not demonstrated that, but for counsel's purported errors, the outcome of the trial would have been any different. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. James offers no basis for concluding that the trial result would have been different if he had access to the records regarding the Barnes investigation and trial, or if the Court had given the jury instructions James now seeks. Nor can James show that his sentencing would have been any different had he had more time to review the Presentence Report and the Government's sentencing memorandum.

James' claim of ineffective assistance of counsel is therefore without merit.

### Conclusion

Fisher's and James' petitions pursuant to 28 U.S.C. § 2255 are hereby granted only to the extent that their convictions for conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 are vacated from the Judgment. Fisher's and James' petition are in all other respects denied. Morris' petition pursuant to 28 U.S.C. § 2255 is hereby denied in its entirety.

So Ordered