STATE OF NEBRASKA, APPELLEE, V.
EDDIE R. ORTIZ, JR., APPELLANT.

600 N.W. 2d 805

Filed October 1, 1999. No. S-98-568.

Glenn A. Shapiro, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Ron Moravec for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Eddie R. Ortiz, Jr., was convicted of two counts of unlawful possession with intent to deliver controlled substances and sentenced accordingly. Ortiz appeals from the trial court's order admitting evidence over his objection, which evidence Ortiz claims was obtained in violation of U.S. Const. amend. IV and Neb. Const. art. I, § 7.

As explained more fully below, the canine sniff for illegal drugs which was conducted at the threshold to Ortiz' apartment where Ortiz had a legitimate expectation of some measure of privacy violated the Fourth Amendment and Neb. Const. art. I, § 7. Although a canine may be deployed to test for illegal drugs in some cases, doing so at the threshold of a dwelling on less than reasonable, articulable suspicion is improper. In this case, the information obtained by the alert of the canine must be excised from the affidavit in support of the search warrant. The residue of the affidavit did not amount to probable cause for the issuance of a search warrant, and the contraband seized pursuant to the defective search warrant must, therefore, be suppressed.

We conclude on the facts of this case that the search of Ortiz' apartment was constitutionally flawed and that the contraband recovered should have been excluded. We reverse, and remand for a new trial consistent with this opinion.

## II. STATEMENT OF FACTS

Sometime during the early evening of August 7, 1997, Omaha police received a telephone call from a concerned citizen (C/C) who told police that she or he "knew of" Ortiz and alleged that Ortiz "has been active in distributing cocaine from his apartment within the past year." Police were given Ortiz' address and a general physical description of Ortiz by C/C. The record indicates that at the time the call was received, Ortiz was not a suspect.

Police verified that Ortiz had lived at the address given by the caller for about 2 years. The police checked their internal records, which showed that Ortiz had a prior conviction in 1991 for possession of a controlled substance, for which he had been sentenced to a 6-month term of imprisonment, and that a concurrent charge had been dismissed. The police records also

showed that Ortiz was charged in early 1994 with possession of marijuana and hashish with intent to deliver but that the charges were dropped.

At about 8:45 p.m. on the same evening, police officers took Pogo, a police dog specially trained to detect the scents of marijuana, cocaine, cocaine base, methamphetamine, amphetamine, and heroin into the hallway outside Ortiz' apartment to perform a canine sniff of the area. The officers ran Pogo in the hallway outside Ortiz' apartment, and Pogo "alerted" by the door to Ortiz' apartment.

On August 8, 1997, officers applied for and obtained a "no-knock" daytime search warrant which entitled them to search the interior of Ortiz' apartment. The affidavit and application for search warrant submitted by the police officers read, in pertinent part, as follows:

> That the following are the grounds for issuance of a search warrant for said property and the reasons for the Affiant's belief, to-wit:
>
> On Thursday, 7 August 1997 in the evening hours, Affiant Officer LANG was contacted by a concerned citizen, hereafter referred to as the C/C. The C/C advised that he/she knew of an individual by the name of Eddie ORTIZ, described as an Hispanic male, mid-twenties, with a small build, who resides at 809 South 70th Street, Apt. #6. The C/C stated that ORTIZ is active in distributing cocaine from his apartment. The C/C stated that ORTIZ has been active in distributing cocaine from his apartment within the past year. The C/C who provided this information did not request any type of monetary compensation for providing this information.
>
> . . . .
>
> On Thursday, 7 August 1997 at approximately 2045 hours, Officers KUNZE, LANG, and HENRY of the Narcotics Unit went to the address of 809 South 70th Street, Apt. 6. Officer HENRY is the drug canine handler of POGO who was utilized at the address to detect the presence of narcotics. Officer HENRY ran POGO by the apartment door at which time POGO alerted to the presence of narcotics. Officer HENRY advised that POGO

made a positive alert for the presence of narcotics from Apartment #6.

Another paragraph in the affidavit, not repeated here, described Pogo's training, the adequacy of which is not relevant to our resolution of the appeal. The affidavit also included the results of the officers' records check and the fact that Ortiz had resided at the apartment since July 1, 1995.

Based on the affidavit offered by police, on August 8, 1997, a Douglas County Court judge issued a warrant authorizing the officers to search Ortiz' apartment for cocaine and related paraphernalia, cash, and weapons. Shortly thereafter, the police officers executed the warrant. Within Ortiz' apartment, the officers found one-quarter of an ounce of cocaine and $6,300 in a kitchen drawer, 4 ounces of marijuana and $11,000 in a freezer, and a notebook containing records of suspected drug transactions.

Ortiz was not present when the officers searched his apartment. After the officers concluded the search, they left a business card with a telephone number at which they could be reached. The police kept Ortiz' apartment under surveillance for an unspecified period, but Ortiz did not appear, and the police subsequently abandoned the surveillance.

Ortiz voluntarily presented himself to police on August 18, 1997. He was charged with possession of cocaine with intent to deliver, a Class II felony in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1995) (count I), possession of marijuana with intent to deliver, a Class III felony in violation of § 28-416(1)(a) (count II), and possession of money/currency used to facilitate the distribution of illegal narcotics, a Class IV felony in violation of § 28-416(16) (count III).

Ortiz filed a motion to suppress all of the evidence seized from his apartment, claiming, inter alia, that the search warrant was not supported by probable cause. The district court for Douglas County overruled the motion on November 6, 1997, finding that the affidavit police submitted in support of the search warrant adequately described Pogo's training and reliability as a drug-sniffing canine and that Pogo's alert in the hallway outside of Ortiz' apartment door provided police with probable cause to obtain the search warrant.

On December 23, 1997, the charges against Ortiz were tried to the court on stipulated facts, with a standing objection by Ortiz to all of the evidence seized from his apartment. The prosecution subsequently withdrew count III, the charge of possession of funds used to facilitate the distribution of illegal drugs. The trial court found Ortiz guilty of counts I and II. On June 3, 1998, Ortiz was sentenced to a term of 3 to 5 years' imprisonment on count I and a term of 2 to 3 years' imprisonment on count II, to be served consecutively.

## III. ASSIGNMENT OF ERROR

Restated, Ortiz claims on appeal that the trial court erred in admitting into evidence the items seized from his apartment as a result of the police search.

## IV. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *Id.*

## V. ANALYSIS

### 1. PROBABLE CAUSE TO ISSUE SEARCH WARRANT

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Johnson, supra.* "Probable cause" sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a find-

ing of probable cause at that time. *State v. Johnson, supra.* Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *State v. Craven, supra.*

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" rule whereby the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Detweiler,* 249 Neb. 485, 544 N.W.2d 83 (1996). As a general rule, an appellate court is restricted to consideration of the information and circumstances found within the four corners of the affidavit. *State v. Johnson, supra.* A search conducted pursuant to a search warrant supported by probable cause is generally considered to be reasonable, and it is a defendant's burden to prove that the search or seizure was unreasonable. *State v. Swift,* 251 Neb. 204, 556 N.W.2d 243 (1996).

Where an affidavit in support of a search warrant is inadequate to establish probable cause, the search warrant is constitutionally defective. *State v. Johnson, supra.* Where a search is conducted pursuant to a constitutionally defective warrant, the evidence obtained in the search must be excluded. *State v. Fitch,* 255 Neb. 108, 582 N.W.2d 342 (1998), relying on *Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). However, not every defect in an affidavit renders the warrant defective or the seizure made pursuant to the warrant unconstitutional. Although it may be necessary to excise certain matter from an affidavit, if the remainder of the affidavit is sufficient to establish probable cause, the warrant issued upon such remaining information in the affidavit will be proper and the results of the search pursuant to the warrant are constitutionally obtained. *United States v. Karo,* 468 U.S. 705, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984); *United States v. Thomas,* 757 F.2d 1359 (2d Cir. 1985), *cert. denied, Fisher v. United States,* 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54, *reversed in part on other grounds* Nos. 97 CIV. 3250 (MP), 97 CIV. 3784 (MP), SS

83 CR. 150 (MP), 97 CIV. 3785 (MP), 1998 WL 283346 (S.D.N.Y. June 1, 1998); *U.S. v. Tarazon-Silva*, 960 F. Supp. 1152 (W.D. Tex. 1997), *aff'd* 166 F.3d 341 (5th Cir. 1998). See, similarly, *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999) (noting that inaccuracy of description of quantity of contraband contained in package in affidavit did not render search warrant invalid).

The affidavit submitted by police in the instant case to obtain a warrant to search Ortiz' apartment consisted of two principal components: the results of the canine sniff by Pogo, the trained police dog, in the hallway outside Ortiz' apartment door and a description of the call police received from C/C, coupled with further facts supplied by the police. We address each component below.

2. EXPECTATION OF PRIVACY AT THRESHOLD OF DWELLING AND REQUIREMENT OF REASONABLE SUSPICION TO DEPLOY CANINE TO SNIFF FOR ILLEGAL DRUGS AT THRESHOLD OF DWELLING

It has been observed that the right of privacy associated with the home under the Fourth Amendment is "one of the unique values of our civilization." *McDonald v. United States*, 335 U.S. 451, 453, 69 S. Ct. 191, 93 L. Ed. 153 (1948). The U.S. Supreme Court recently noted:

"In 1604, an English court made the now-famous observation that 'the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose.' *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K. B.)."

*Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999). The Court continued: "The Fourth Amendment embodies this centuries-old principle of respect for the privacy of the home." *Id.* The right to be free from unreasonable searches and seizures of the home is substantial, and it has been said to be the " 'chief evil against which the wording of the Fourth Amendment is directed.' " *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)).

In Nebraska, freedom from unreasonable searches and seizures is guaranteed by U.S. Const. amend. IV and Neb. Const. art. I, § 7. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). The Fourth Amendment and Neb. Const. art. I, § 7, prohibit only unreasonable searches and seizures. These constitutional provisions do not protect citizens from all governmental intrusion, but only from unreasonable intrusions. *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994).

The leading case regarding canine sniffs is *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), in which it was concluded that the evidence of cocaine involved therein should be suppressed. In *Place*, the U.S. Supreme Court considered the federal Fourth Amendment implications of the use of a drug detection dog to sniff luggage in an airport. After Place arrived at a New York airport, he refused to voluntarily allow police to search his two suitcases. The officers allowed Place to leave, but took his luggage to a separate location for a drug detection dog to sniff. The dog alerted aggressively to one of Place's suitcases. At this point, approximately 90 minutes had elapsed from the officers' initial contact with Place. It was a Friday afternoon, and rather than immediately seeking a search warrant, the officers held Place's suitcases over the weekend and applied for a search warrant the following Monday morning. When police executed the warrant and searched Place's suitcases, they found 1,125 grams of cocaine.

The Court in *Place* stated that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. The Court in *Place* observed that a canine sniff is sui generis in that the canine alert is limited to the existence of contraband and that the sniff is not highly intrusive. The *Place* Court determined that the canine sniff of the luggage did not, by itself, violate the Fourth Amendment. *Id.* The *Place* Court concluded, however, that because the police detained the luggage for a lengthy period and failed to diligently pursue the investigation, the cocaine discovered in Place's luggage pursuant to the search warrant should have been suppressed.

In analyzing the facts of the case, the *Place* Court observed that a seizure of Place's luggage might be justified within the exception to the Fourth Amendment in *Terry v. Ohio*, 392 U.S.

1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), where police possess a reasonable suspicion based upon specific and articulable facts that illegal narcotics are present and the investigative detention is properly limited in scope. The *Place* Court stated that the canine sniff was not a search under the Fourth Amendment, and we have similarly concluded in *State v. Morrison,* 243 Neb. 469, 500 N.W.2d 547 (1993), that a canine sniff of a package sent by express mail was not a search but was, nevertheless, proper because it was preceded by facts amounting to reasonable suspicion.

Reasonable suspicion, commonly required to support a seizure or detention, *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990), is a quantum of facts less than probable cause, commonly required to support a search, *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). See, also, *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). Where the police have reasonable suspicion, they may pursue their investigation either to confirm their suspicion or to dispel the suspicion that crime is afoot. *Terry v. Ohio, supra.*

Following *United States v. Place, supra*, in canine sniff cases in a variety of settings such as canine sniffs of luggage, packages, and public warehouses, the majority of courts have approved of the admission of evidence gained by the use of a canine sniff if the canine sniff evidence was obtained based on a reasonable, articulable suspicion. See *State v. Waz*, 240 Conn. 365, 692 A.2d 1217 (1997) (cases collected). For example, in the context of a canine sniff of the corridor of a storage locker facility, the Pennsylvania Supreme Court, referring to the canine sniff as a "search" under Pennsylvania's constitution, stated:

> We believe that there is a Fourth Amendment middle ground applicable to the investigations conducted by police handlers of narcotics detection dogs. On the one hand, much of the law enforcement utility of such dogs would be lost if full blown warrant procedures were required before a canine sniff could be used; but on the other, it is our view that a free society will not remain free if police may use this, or any other crime detection device, at random and without reason. Accordingly, we hold that a

narcotics detection dog may be deployed to test for the presence of narcotics . . . where:

(1) the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and

(2) the police are lawfully present in the place where the canine sniff is conducted.

Our holding is based in part, on considerations not dissimilar to those stated in *United States v. Place:* a canine sniff-search is inherently less intrusive upon an individual's privacy than other searches such as wiretapping or rummaging through one's luggage; it is unlikely to intrude except marginally upon innocent persons; and an individual's interest in being free from police harassment, annoyance, inconvenience and humiliation is reasonably certain of protection if the police must have a reason before they may . . . utilize a narcotics detection dog.

*Com. v. Johnston*, 515 Pa. 454, 465-66, 530 A.2d 74, 79 (1987).

With respect to canine sniffs in hallways adjoining residential quarters, the type of sniff which is the subject of the instant case, numerous courts have held that a canine sniff intrudes into an area where an individual has a reasonable expectation of privacy and that a canine sniff in a residential hallway must be supported by at least a reasonable suspicion based on articulable facts. Thus, for example, in *People v. Dunn*, 77 N.Y.2d 19, 26, 564 N.E.2d 1054, 1058, 563 N.Y.S.2d 388, 392 (1990), *cert. denied* 501 U.S. 1219, 111 S. Ct. 2830, 115 L. Ed. 2d 1000 (1991), New York's highest court, in a case involving a warrantless canine sniff in an apartment hallway, concluded a canine sniff was a search under the state's constitution and stated as follows: "Given the uniquely discriminate and nonintrusive nature of such an investigative device, as well as its significant utility to law enforcement authorities, we conclude that it may be used without a warrant or probable cause, provided that the police have a reasonable suspicion that a residence contains illicit contraband." The *Dunn* court added: "To hold otherwise, we believe would raise the specter of the police roaming indiscriminately through the corridors of public housing projects with trained dogs in search of drugs . . . . Such an Orwellian notion would be

repugnant under our State Constitution . . . ." *Id.* at 25, 564 N.E.2d at 1058, 563 N.Y.S.2d at 392.

The above-quoted material from *People v. Dunn, supra*, recognized that "we cannot forgive the requirements of the Fourth Amendment in the name of law enforcement [and] it is not asking too much that officers be required to comply with the basic command of the Fourth Amendment before the innermost secrets of one's home . . . are invaded." *Berger v. New York*, 388 U.S. 41, 62-63, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967).

For the sake of completeness, we note that some courts have held that there is no legitimate privacy expectation in a residential apartment hallway and that thus, canine sniffs do not implicate the Fourth Amendment. See, e.g., *Brown v. U.S.*, 627 A.2d 499 (D.C. 1993); *State v. Taylor*, 763 S.W.2d 756 (Tenn. Crim. App. 1988). At the other end of the spectrum, some courts have stated that there is a heightened expectation of privacy in a residential apartment hallway, *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), *cert. denied, Fisher v. United States*, 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54, *reversed in part on other grounds* Nos. 97 CIV. 3250 (MP), 97 CIV. 3784 (MP), SS 83 CR. 150 (MP), 97 CIV. 3785 (MP), 1998 WL 283346 (S.D.N.Y. June 1, 1998), and thus a canine sniff may not proceed in the absence of probable cause. See, similarly, *State v. Dearman*, 92 Wash. App. 630, 962 P.2d 850 (1998) (holding that probable cause is required prior to canine sniff outside residential garage).

We agree with the courts which conclude an individual's Fourth Amendment privacy interests may extend in a limited manner beyond the four walls of the home, depending on the facts, including some expectation of privacy to be free from police canine sniffs for illegal drugs in the hallway outside an apartment or at the threshold of a residence, and that a canine sniff under these circumstances must be based on no less than reasonable, articulable suspicion. As described more fully below, under the facts of this case, we conclude that, given the legitimate expectation of some measure of privacy in the hallway, the canine sniff for illegal drugs which lacked reasonable suspicion violated the Fourth Amendment and Neb. Const. art. I, § 7. Our reasoning is similar to that in *Katz v. United States*, 389

U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), in which the U.S. Supreme Court reasoned that given the legitimate expectation of privacy in a telephone booth, the placement of a monitoring device on the outside thereof violated the Fourth Amendment's proscription against unreasonable searches and seizures. See, similarly, *McDonald v. United States*, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153 (1948) (reasoning that trespass by police officers into rooming house violated privacy of home, requiring suppression of seized evidence).

### 3. APPLICATION OF LAW TO THIS CASE

(a) Existence of Expectation of Privacy in This Case

In the instant case, we recognize that the canine sniff was not conducted inside the apartment; however, the information gained by the canine alert as to the existence of contraband inside the apartment emanated from inside the apartment and was detected outside at its threshold. In this regard, it has been held that "[i]ndiscriminate monitoring of property that has been withdrawn from public view would present far too serious a threat to privacy interests in the home to escape entirely some sort of Fourth Amendment oversight." *United States v. Karo*, 468 U.S. 705, 716, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984). It has also been observed that the reach of the Fourth Amendment "cannot turn upon the presence or absence of a physical intrusion into any given enclosure," *Katz v. United States*, 389 U.S. at 353; that the Fourth Amendment forecloses a distinction between " 'worthy' " and " 'unworthy' " objects which are the subject of investigation, *United States v. Ross*, 456 U.S. 798, 822, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); and that "[t]hose suspected of drug offenses are no less entitled to [Fourth Amendment] protection than those suspected of nondrug offenses," *United States v. Karo*, 468 U.S. at 717.

In connection with assessing the expectation of privacy in Ortiz' hallway for Fourth Amendment and Nebraska constitutional purposes, we note that the " 'Fourth Amendment protects *people, not places.*' " (Emphasis in original.) *State v. Havlat*, 222 Neb. 554, 558, 385 N.W.2d 436, 439 (1986), quoting *Katz v. United States, supra*. See, also, *State v. Ramaekers*, 257 Neb. 391, 597 N.W.2d 608 (1999). As noted above in *Katz*, the elec-

tronic device affixed to the outside of a telephone booth was determined to violate the Fourth Amendment because the user of the telephone booth had a legitimate expectation of privacy upon closing the door to the telephone booth and placing a call. It has been stated: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S at 351-52. In *Katz*, Justice Stewart, writing for the majority, cautioned that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.' " 389 U.S. at 350. Justice Harlan, concurring, said the extent of Fourth Amendment protection is determined by reference to a place. *Katz v. United States*, 389 U.S. at 361. The principles enunciated in *Katz* have long been relied upon in our jurisprudence. *State v. Havlat, supra.* Because the situs of the canine sniff in this case is the threshold to Ortiz' apartment, we must make reference to the adjoining dwelling in our analysis of privacy in this appeal.

In cases such as the one before us, to determine whether an individual has an interest protected by the Fourth Amendment and Neb. Const. art I, § 7, one must determine whether an individual has a legitimate or justifiable expectation of privacy in the place subjected to canine scrutiny. Ordinarily, two inquiries are required. First, the individual must have " 'exhibited an actual (subjective) expectation of privacy,' " and second, "the expectation is one that 'society is prepared to recognize as "reasonable." ' " *Hudson v. Palmer*, 468 U.S. 517, 525 n.7, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). This two-part inquiry has been adopted and utilized by this court. See, *State v. Ramaekers, supra*; *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997). The "ultimate question" is whether one's claim of privacy from governmental intrusion is reasonable in light of all the surrounding circumstances. *Hudson v. Palmer, supra.* See, also, *Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990) (apparently combining *Hudson v. Palmer* two-part inquiry into one).

Reasonable expectations of privacy vary according to the context of the case, *O'Connor v. Ortega*, 480 U.S. 709, 107 S.

Ct. 1492, 94 L. Ed. 2d 714 (1987). It has been observed: "Legitimation of expectation of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 144 n.12, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). There can be little doubt, and the cases confirm, see, e.g., *Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999), that a home, including an apartment home, is considered by both occupants and society to be entitled to greater privacy than objects of a less intimate nature, such as a storage locker, *Com. v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987); or of a more transient nature, such as a package entrusted to the postal service, *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999); or a vehicle, *State v. Pellicci*, 133 N.H. 523, 580 A.2d 710 (1990). See, also, *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). In this regard, we note that case law recognizes that there is a greater degree of privacy expected in the home than in a hotel or a motel. See·*Commonwealth v. Panetti*, 406 Mass. 230, 547 N.E.2d 46 (1989).

In assessing the privacy interest in the apartment hallway, we must evaluate whether, under the circumstances, the area of the hallway should be placed under the home's "'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987) (defining, inter alia, curtilage). In this regard, it should be noted that given the undisputed fact that the officers went to the hallway outside Ortiz' apartment on one occasion solely to deploy Pogo, in analyzing this case, we are not obliged to speculate as to whether the police might have been lawfully present in the apartment hallway unaccompanied by the canine whose purpose in being there was to detect illegal drugs.

We recognize, as noted earlier in this opinion, that the authorities are split as to whether an occupant has a reasonable expectation of privacy in the hallway outside his or her apartment. We agree with the courts which hold that there is some measure of privacy at the threshold of an apartment dwelling. For example, in *People v. Killebrew*, 76 Mich. App. 215, 218,

256 N.W.2d 581, 583 (1977), it was stated that "[g]enerally, a hallway shared by tenants in a private multi-unit dwelling is not a public place. It is a private space intended for the use of the occupants and their guests, and an area in which the occupants have a reasonable expectation of privacy." For the sake of completeness, we note that under the case law, the degree of privacy society is willing to accord an apartment hallway may depend on the facts, such as whether there is an outer door locked to the street which limits access, e.g., *People v. Trull*, 64 Ill. App. 3d 385, 380 N.E.2d 1169 (1978); the number of residents using the hallway, e.g., *United States v. Fluker*, 543 F.2d 709 (9th Cir. 1976); the number of units in the apartment complex, e.g., *People v. Killebrew, supra*; and the presence or absence of no-trespassing signage, e.g., *State v. Taylor*, 763 S.W.2d 756 (Tenn. Crim. App. 1988).

Where the police unaccompanied by a canine are merely pursuing an investigation, it has been held that they may go to the stairway leading to an apartment, *State v. Breuer*, 577 N.W.2d 41 (Iowa 1998), or walk around to the rear of a defendant's home, *United States v. Anderson*, 552 F.2d 1296 (8th Cir. 1977), notwithstanding an occupant's expectation of some measure of privacy in these locations and that that which an officer observes in plain view while lawfully pursuing an investigation is not protected by the Fourth Amendment. We have recently observed that "Objects, falling within the plain view of an officer, who has the right to be in the position to have such view, does not constitute a search." *State v. Ramaekers, ante* p. 391, 397, 597 N.W.2d 608, 613 (1999). See, also, *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). To the foregoing we add: That which a law enforcement officer detects using his or her unaided senses while lawfully present does not violate Fourth Amendment or Nebraska constitutional principles, because that which is voluntarily exposed to the general public and observable from an unprotected area without using sense-enhancing devices is not part of a person's private affairs. See *State v. Dearman*, 92 Wash. App. 630, 962 P.2d 850 (1998) (holding, inter alia, that canine sniff of residential garage was search under Washington constitution). It has also been observed: "What can be heard by the naked ear, when the ear is where it

has a right to be, is not protected by the Fourth Amendment." *United States v. Agapito*, 620 F.2d 324, 331 (2d Cir. 1980), *cert. denied* 449 U.S. 834, 101 S. Ct. 107, 66 L. Ed. 2d 40.

In contrast to the officers' observations obtained by plain view, the use of a canine such as occurred in this case is "not a mere improvement of [the officers'] sense of smell, as ordinary eyeglasses improve vision, but is a significant enhancement accomplished by a different, and far superior, sensory instrument." *United States v. Thomas*, 757 F.2d 1359 at 1367 (2d Cir. 1985), *cert. denied, Fisher v. United States*, 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54, *reversed in part on other grounds* Nos. 97 CIV. 3250 (MP), 97 CIV. 3784 (MP), SS 83 CR. 150 (MP), 97 CIV. 3785 (MP), 1998 WL 283346 (S.D.N.Y. June 1, 1998). Like the electronic surveillance equipment in *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), the results of which surveillance were suppressed as obtained in violation of the Fourth Amendment, the information "originate[d] from inside a private area and travel[ed] beyond its perimeters," *People v. Price*, 54 N.Y.2d 557, 565, 431 N.E.2d 267, 271, 446 N.Y.S.2d 906, 910 (1981) (Meyer, J., concurring) unexposed to all except those with supersensitive detection devices. See 1 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 2.2(f) (3d ed. 1996). By using a canine to sniff for illegal drugs in a hallway outside Ortiz' apartment, the police have engaged an investigative technique by which they are able to obtain information regarding the contents of a place that has traditionally been accorded a heightened expectation of privacy. See *People v. Dunn*, 77 N.Y.2d 19, 564 N.E.2d 1054, 563 N.Y.S.2d 388 (1990), *cert. denied* 501 U.S. 1219, 111 S. Ct. 2830, 115 L. Ed. 2d 1000 (1991). While such an investigative technique may be minimally intrusive, it nevertheless implicates the Fourth Amendment and Neb. Const. art. I, § 7, and requires independent reasonable suspicion. *Id.* The canine sniff for illegal drugs at the threshold of a dwelling is an investigative tool which may be used to build a case of probable cause for issuance of a search warrant if there is reasonable suspicion to take the canine to the location of the test.

### (b) Lack of Reasonable Suspicion to Deploy the Canine in This Case

The canine sniff for illegal drugs in this case transpired in a location in which Ortiz had a legitimate expectation of some measure of privacy, and therefore, the intrusion is subject to the Fourth Amendment and Neb. Const. art. I, § 7, and we have concluded that the officers needed at a minimum reasonable suspicion before proceeding with the canine sniff. The investigative tool of the canine sniff at the threshold of a dwelling may thus be used where it is preceded by information amounting to reasonable, articulable suspicion. As detailed below, we determine that the officers lacked reasonable suspicion to take Pogo into the hallway outside Ortiz' apartment door in this case.

With respect to the existence of reasonable suspicion, we have explained that reasonable suspicion entails some minimal level of objective justification which is more than an inchoate and unparticularized suspicion or hunch, but less than the level of suspicion required for a finding of probable cause. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). Reasonable suspicion, like probable cause, depends upon both the content of information possessed by police and its degree of reliability. Both factors are considered in the totality of the circumstances that must be taken into account to evaluate whether reasonable suspicion exists. *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992), relying on *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). We have said with respect to certain investigations that for officers to have reasonable suspicion, they must have a reasonable belief that a crime has been or is about to be committed. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied* 507 U.S. 1000, 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993); *State v. Thomas, supra.*

A review of decisions of other courts regarding canine sniffs, albeit in nonresidential settings, is helpful in illustrating the types of facts which amount to reasonable suspicion sufficient to justify a canine sniff. Common threads in such cases as *U.S. v. Mondello*, 927 F.2d 1463 (9th Cir. 1991), *McGahan v. State*, 807 P.2d 506 (Alaska App. 1991), and *Com. v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987), and other cases in which reasonable

suspicion has been found to justify a canine sniff for contraband, are a police officer's personally observing suspicious conduct or, in the alternative, investigating incriminating as opposed to innocuous facts or receiving incriminating information from an established reliable informant.

We examine in the instant case whether the police had at least reasonable, articulable suspicion to bring Pogo into the hallway outside of Ortiz' apartment to conduct the canine sniff, which sniff is subject to the Fourth Amendment and the Nebraska Constitution. If the police were in possession of information amounting to reasonable suspicion when the canine sniff was conducted, the results of the sniff can be considered in evaluating the existence of probable cause for the issuance of the search warrant. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson, supra*; *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991); *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). If, however, the police did not have at least reasonable, articulable suspicion to proceed to the hallway outside Ortiz' apartment for the purpose of running Pogo in the hallway outside Ortiz' door, evidence of Pogo's reaction cannot be considered in assessing the existence of probable cause to issue the search warrant, and if the remainder of the information in the affidavit does not amount to probable cause, the warrant is defective and the fruits of the search must be suppressed. See, e.g., *State v. Fitch*, 255 Neb. 108, 582 N.W.2d 342 (1998) (holding, in reliance on *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), that evidence directly produced by unconstitutional search, as well as evidence indirectly derived from unconstitutional search, must be suppressed).

The record indicates that police officers brought Pogo to Ortiz' apartment building for the purpose of performing a canine sniff on the same evening in which they had earlier received the anonymous call from C/C alleging that Ortiz had been actively distributing cocaine from his apartment "within the past year." This information from C/C was an uncorroborated allegation from an anonymous source whose reliability was unknown to police. The caller reported activity "within the past year" but stated no exigent circumstance that demanded immediate action

from police. The officers did not conduct a meaningful investigation. The police verified innocuous information which had been supplied by C/C and did a criminal records check which revealed a 6-year-old conviction and charges dropped more than 3 years prior to enlisting Pogo and his handler to perform a canine sniff in the hallway outside Ortiz' apartment. Prior to receiving C/C's call, police had no suspicion that Ortiz was presently engaged in criminal conduct. The officers made no observations of Ortiz or of the proposed location of the canine sniff prior to deploying Pogo. The information provided by the anonymous C/C coupled with the verification of inconclusive facts did not amount to a quantum of facts or to the degree of reliability which amounted to reasonable suspicion. See *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). Based on the foregoing, we determine that the officers did not have reasonable suspicion to go to the hallway outside of Ortiz' apartment for the purpose of running Pogo outside of Ortiz' apartment to detect illegal drugs.

The information resulting from the alert was not obtained in a manner consistent with the Fourth Amendment and Neb. Const. art. I, § 7. The information gained by virtue of Pogo's sniff outside Ortiz' apartment was not constitutionally obtained, and such information cannot be considered as a basis for obtaining a search warrant. We must, therefore, excise the information generated by Pogo's alert in the hallway from the affidavit and examine the remainder of the affidavit for the existence of probable cause. The remainder of the affidavit consists of the information supplied by C/C, coupled with some additional facts noted above.

(C) Evaluation of Information in Affidavit Other
Than Canine Alert for Probable Cause:
Reliability and Sufficiency of Information
Supplied by C/C and Other Facts

To have the evidence seized pursuant to the search warrant suppressed, Ortiz must show that there was not a sufficient residue of information in the affidavit amounting to probable cause to support the warrant without consideration of the fact of the improperly obtained canine alert. In addition to the positive

canine alert, the affidavit before the issuing judge consisted of the information supplied by C/C and the address and records check of Ortiz.

When a search warrant is obtained on the strength of information received from an informant, the affidavit in support of the issuance of the warrant must set forth facts demonstrating the basis of the informant's knowledge of criminal activity. The affidavit must also either establish the informant's credibility or set forth a police officer's independent investigation of the information supplied by the informant. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994), *disapproved in part on other grounds, State v. Johnson, supra*; *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992), *disapproved in part on other grounds, State v. Johnson, supra*. This is so because without information regarding the informant's credibility, " '[t]he magistrate would have no way of ascertaining whether this tip was rumor, speculation, vendetta, reprisal, or gossip.' " *State v. Lytle*, 255 Neb. at 749, 587 N.W.2d at 672, quoting with approval *State v. Valley*, 252 Mont. 489, 830 P.2d 1255 (1992). If an affidavit does not establish that an informant is reliable, a search warrant issued solely upon the information supplied by the informant is invalid. *State v. Lytle, supra.*

As set forth above in the passage excerpted from the police affidavit submitted in order to obtain the warrant, C/C's name was not made known to the magistrate nor did the affidavit indicate that C/C was known to the police officers or had provided reliable information to them in the past. On appeal, the State characterizes C/C as a citizen informant whose tip was presumptively reliable. This characterization is incorrect because the affidavit submitted in support of the application for a search warrant does not identify C/C as a citizen informant, which is a special status which must be affirmatively alleged. See, *State v. Lytle, supra*; *State v. Utterback, supra*. Although the affidavit stated that C/C did not request payment for the information given to police, this fact, without more, does not establish that the tipster is a reliable citizen informant. See *State v. Utterback, supra*.

The affidavit detailed no statement by C/C against his or her penal interest which might have tended to increase the likelihood that the information supplied by C/C was true. See *id.* The affidavit did not indicate how or why C/C knew that Ortiz sold cocaine from his apartment. The affidavit did not state whether and when C/C had been inside the apartment, purchased cocaine from Ortiz, or been present during a drug sale by Ortiz. See, *State v. Lytle, supra*; *State v. Utterback, supra.*

The affidavit did recite that police had confirmed that Ortiz lived at the address provided by C/C and that Ortiz' appearance matched the general description supplied by C/C. Ortiz' address and physical description are neutral facts which do not, without more, imply criminality. See, *State v. Flores, supra*; *State v. Utterback, supra.* Corroboration of this information did not generate enough information to establish probable cause that Ortiz had committed, or was about to commit, a crime. *Id.*

The affidavit included information from police records that Ortiz had a prior conviction in 1991 and that Ortiz had been arrested in 1994, but that these charges were dropped. The information regarding Ortiz' drug-related criminal history may be considered relevant information which could be properly included by police in the affidavit to demonstrate probable cause. *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). However, without proof of present criminal activity, the information about Ortiz' past criminal activity lacks temporal significance and did not by itself create probable cause to believe that Ortiz was currently engaged in the same genre of criminal conduct or any criminal conduct which had led to his prior conviction. See, *State v. Johnson, supra*; *State v. Reeder*, 249 Neb. 207, 543 N.W.2d 429 (1996), *cert. denied* 519 U.S. 1006, 117 S. Ct. 506, 136 L. Ed. 2d 397.

In this case, the permissible information contained in the affidavit submitted in support of issuing a search warrant, consisting of the information supplied by C/C, Ortiz' history, and certain innocent details of Ortiz' life, failed to demonstrate a totality of circumstances that established probable cause. We cannot say that the "totality of the circumstances," see *Illinois v.*

*Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), without consideration of the canine alert, provided a sufficient basis for the issuance of the search warrant. Because it was issued without probable cause, the search warrant was constitutionally defective. The State has not asked that we consider the good faith exception under *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and, accordingly, we do not engage in such an analysis.

### (d) Outcome of This Case

The evidence seized pursuant to a defective warrant must be suppressed. *State v. Fitch,* 255 Neb. 108, 582 N.W.2d 342 (1998). In sum, the trial court's rulings denying the motion to suppress and admitting the challenged evidence were erroneous, and the judgment is reversed, and the cause is remanded for a new trial.

## VI. CONCLUSION

The Fourth Amendment embodies the centuries-old principle of respect for the privacy of the home. Under the federal and Nebraska Constitutions, a canine sniff for illegal drugs conducted at the threshold of a dwelling detects information regarding the contents inside the home, and an individual has a legitimate expectation of privacy inside the home even as to these unworthy contents. Under the Fourth Amendment and Neb. Const. art. I, § 7, an occupant has a legitimate expectation of some measure of privacy in the hallway immediately outside his or her apartment or at the threshold of his or her home. Given such constitutional protection, before a drug-detecting canine can be deployed to test the threshold of a home, the officers must possess at a minimum reasonable, articulable suspicion that the location to be tested contains illegal drugs.

We have concluded in the instant case that due to the absence of reasonable, articulable suspicion, it was improper for the police to go to the threshold of Ortiz' residence for the sole purpose of deploying a canine to sniff for the existence of illegal drugs inside the home. In this case, an anonymous tip, inter alia, did not provide reasonable, articulable suspicion that would constitutionally justify a canine sniff investigation immediately outside an individual's dwelling. The result of the canine alert

must be disregarded in evaluating the sufficiency of the affidavit in support of the search warrant, and the residue of the affidavit did not amount to probable cause to issue a search warrant.

There was no probable cause to justify issuance of the warrant to search Ortiz' apartment. The search warrant was constitutionally defective. Because the fruits of the unconstitutional search should have been excluded, the trial court erred in overruling Ortiz' motion to suppress the evidence seized pursuant to the search and in admitting that evidence at trial. The trial court's ruling denying the motion to suppress was error and the ruling admitting the challenged evidence was error, and thus, the judgment of the district court is reversed, and the cause is remanded for a new trial consistent with this opinion.

REVERSED AND REMANDED FOR A NEW TRIAL.

CONNOLLY, J., concurring

I concur in the result but disagree with the conclusion of the majority that a canine sniff performed outside an apartment for the purpose of detecting drugs located inside that apartment may be performed without a warrant based on reasonable suspicion. I would hold that the use of a canine at the threshold of a dwelling to detect an item found inside that dwelling constitutes a search, thus triggering the protection of the Fourth Amendment. Due to the heightened expectation of privacy one has in his or her dwelling, I would apply the standard principle that absent only a few narrowly prescribed exigent circumstances, the search of a dwelling must be made pursuant to a warrant based on probable cause.

The issues in the instant case are (1) whether a canine sniff of the exterior of a dwelling that is utilized to detect the presence of contraband inside that dwelling constitutes a search or seizure and if so, (2) whether the search was reasonable, i.e, whether the limited intrusive nature of the search and the fact that it can detect only contraband act to lower the standard from probable cause to reasonable suspicion.

## WHETHER THE FOURTH AMENDMENT IS IMPLICATED

The majority fails to conclusively state how the protections of the Fourth Amendment apply to Ortiz. As the majority correctly

states, the Fourth Amendment and Neb. Const. art. I, § 7, prohibit only unreasonable searches and seizures. Obviously, if no search or seizure occurred, Ortiz could not claim the protections of the Fourth Amendment, and the inquiry would end. See, e.g., *U.S. v. Colyer*, 878 F.2d 469 (D.C. Cir. 1989) (canine sniff was not search and therefore neither reasonable suspicion nor probable cause was required). Because it is clear that a seizure did not take place in the instant case where there was nothing tangible taken or detained by the police, I focus my inquiry only on whether a search occurred. *United States v. Karo*, 468 U.S. 705, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984). See, generally, *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995) (discussing relation of property interests to determination of whether seizure has occurred).

As the majority stated, this court has traditionally relied on the principles enunciated in *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), when considering whether Fourth Amendment protections are involved. See, also, *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986) (discussing *Katz*). A person's right to invoke the protection of the Fourth Amendment as to unreasonable searches and seizures depends not upon a property right in the invaded place, but upon whether the person who claims protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place. *Katz, supra*; *State v. Harms*, 233 Neb. 882, 449 N.W.2d 1 (1989). Although the Fourth Amendment protects people, not places, one cannot understand an individual's privacy expectations without reference to a place. *Katz, supra* (Harlan, J., concurring). Thus, we have held that " '[o]wnership and possessory rights in "places" are still important in determining whether or not a particular person has a legitimate expectation of privacy in a particular place.' " *Harms*, 233 Neb. at 888, 449 N.W.2d at 5.

I concede there is a split of authority regarding whether a canine sniff constitutes a search. Relying on the dicta in *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), which stated that a canine sniff of luggage that was detained in a public airport did not constitute a search within the meaning of the Fourth Amendment, the federal courts over-

whelmingly hold that canine sniffs are not searches. See *State v. Waz*, 240 Conn. 365, 292 A.2d 1217 (1997) (citing federal cases). We have also previously relied on *Place* to determine that a canine sniff of an express mail package did not constitute a search. *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). In addition to *Place*, *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984), made it clear that some types of police techniques such as field tests and dog sniffs are not protected as searches under the Fourth Amendment because of the limited nature of the intrusion. *Jacobsen* further indicated that if a police technique reveals only the presence or absence of contraband, the Court does not view the technique used to be a search.

State courts are also divided on the issue. Some courts conclude, usually on the basis of their state constitution, that canine sniffs constitute searches. However, other courts apply the reasoning of *Place* and *Jacobsen* to conclude that canine sniffs do not constitute a search. The reasoning of *Place* and *Jacobsen* is not without criticism, some of which I find relevant to the instant case.

First, as Justice Brennan noted in his dissent in *Jacobsen*, when the focus is on the nature of the item sought and revealed through the use of a dog sniff, the resulting theory is that individuals have no reasonable expectation of privacy due to the fact that they are carrying contraband. As Justice Brennan stated, this is contrary to the "fundamental principle that '[a] search prosecuted in violation of the Constitution is not made lawful by what it brings to light.'" *Jacobsen*, 466 U.S. at 140, quoting *Byars v. United States*, 273 U.S. 28, 47 S. Ct. 248, 71 L. Ed. 520 (1927). Such a focus also ignores the principles articulated in *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), in which the Court held that Katz had a legitimate expectation of privacy in his telephone conversation regardless of the illegality of the content of that conversation. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible

to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351-52.

I agree that a dog sniff is undisputably less intrusive than a "full-blown" search due to its ability to identify only the presence or absence of contraband. However, as illustrated by Justice Brennan's dissent in *Jacobsen* and this court's reliance on the principles enunciated in *Katz*, this distinction alone should not be the deciding factor when considering whether a sniff constitutes a search. Were this to become the deciding factor, the court would act to foreclose any consideration of the circumstances under which the sniff was conducted and "may very well [pave] the way for technology to override the limits of law in the area of criminal investigation." *Jacobsen*, 466 U.S. at 137-38 (Brennan, J., dissenting). See, also, Hope Walker Hall, *Sniffing Out the Fourth Amendment:* United States v. Place—*Dog Sniffs—Ten Years Later*, 46 Maine L. Rev. 151 (1994). To the extent that a few cases appear to consider the ability of canine sniffs to detect only contraband as the deciding factor without considering other circumstances, I find the reasoning of those cases to be unpersuasive. See, *U.S. v. Reed*, 141 F.3d 644 (6th Cir. 1998); *U.S. v. Lingenfelter*, 997 F.2d 632 (9th Cir. 1993); *U.S. v. Colyer*, 878 F.2d 469 (D.C. Cir. 1989).

More important, the U.S. Supreme Court left unclear whether canine sniffs do not constitute searches only when conducted in areas such as airports, where the expectation of privacy on the part of passengers is already lowered. See Hall, *supra*. This is an important distinction because as one author has noted, the large majority of federal court decisions address dog sniffs in the context of luggage or other public areas outside of the defendant's personal residence. Such cases require only a plain application of the dicta in *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). However, when a sniff occurs in the context of an area where there is a heightened expectation of privacy, the Second Circuit, along with many state courts, concludes that such sniffs do constitute searches. See Hall, *supra* (listing cases). I find the reasoning of these cases to be convincing.

In *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), the Second Circuit held that a canine sniff conducted at the thresh-

old of an apartment constituted a search of that apartment under the U.S. Constitution, requiring a warrant based upon probable cause. Specifically, the court held:

> Here the defendant had a legitimate expectation that the contents of his closed apartment would remain private, that they could not be "sensed" from outside his door. Use of the trained dog impermissibly intruded on that legitimate expectation. The Supreme Court in *Place* found only "that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did not constitute a 'search' within the meaning of the Fourth Amendment." . . . Because of [the defendant's] heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search.

*Thomas,* 757 F.2d at 1367. Thus, the *Thomas* court stated:

> It is one thing to say that a sniff in an airport is not a search, but quite another to say that a sniff can *never* be a search. The question always to be asked is whether the use of a trained dog intrudes on a legitimate expectation of privacy.

*Id.* at 1366.

Other federal circuits have reconciled the holding of *Thomas* by noting that the issues in the cases they had under consideration did not involve an area *such as a dwelling* where the expectation of privacy is heightened. I believe this implicitly acknowledges that there may be some instances in which a canine sniff might be considered a search. See, e.g., *U.S. v. Stone,* 866 F.2d 359 (10th Cir. 1989) (distinguishing *United States v. Thomas,* 757 F.2d 1359 (2d Cir. 1985), on basis of heightened expectation of privacy); *U.S. v. Whitehead,* 849 F.2d 849, 857 (4th Cir. 1988) (distinguishing sleeping car on train from dwelling in *United States v. Thomas, supra,* and stating, "*Place* obviously did not sanction the indiscriminate, blanket use of trained dogs in all contexts"), *abrogated in part on other grounds, Gozlon-Peretz v. United States,* 498 U.S. 395, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991); *U.S. v. Thomas,* 787 F. Supp. 663 (E.D. Tex. 1992) (placing dog inside trunk and passenger compartment of vehicle constituted invasion into area where there was expecta-

tion of privacy). See, also, Hope Walker Hall, *Sniffing Out the Fourth Amendment: United States v. Place—Dog Sniffs—Ten Years Later*, 46 Maine L. Rev. 151 (1994) (discussing cases). This distinction has been noted by state courts as well. See, *State v. Young*, 123 Wash. 2d 173, 867 P.2d 593 (1994) (noting that private residences were not involved in prior cases where Washington appellate courts approved warrantless dog sniffs); *State v. Dearman*, 92 Wash. App. 630, 962 P.2d 850 (1998) (dog sniff of garage of private residence required warrant based on probable cause).

Although a canine sniff for narcotics may be less intrusive in relation to other investigatory methods and will disclose only the presence or absence of narcotics, it remains a way of detecting the contents of a private, enclosed space. Through the use of a dog, officers are able to obtain information about what is contained within a dwelling that they could not obtain utilizing their own senses. "Consequently, the officer's use of a dog is not a mere improvement of their sense of smell, as ordinary eyeglasses improve vision, but is a significant enhancement accomplished by a different, and far superior, sensory instrument." *Thomas*, 757 F.2d at 1367. See, also, *Dearman*, 92 Wash. App. at 635, 962 P.2d at 853 ("using a narcotics dog goes beyond merely enhancing natural human senses and, in effect, allows officers to ' "see through the walls" of the home' "); *State v. Pellicci*, 133 N.H. 523, 580 A.2d 710 (1990) (canine sniff of vehicle is search because dog discerned something not otherwise apparent to officers through their own senses).

The majority in the instant case never addresses whether they consider the canine sniff conducted at the threshold of Ortiz' apartment to be a search. Rather, the majority states that Ortiz had some expectation of privacy in the hallway and applies a reasonable suspicion standard to determine whether the sniff was reasonable. I disagree with this reasoning. As illustrated by *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), *Dearman, supra*, and others, the dog in the instant case was not used to locate contraband in the hallway. Rather, it was used to determine whether there was contraband *inside* Ortiz' apartment. As the second part of this concurrence illustrates, the location of the dog in attempting to determine the contents of the

apartment may be a consideration when determining whether the search was reasonable, but it does not change the fact that the officers used the canine to locate something inside a private dwelling. Thus, it is Ortiz' expectation of privacy in his apartment that is at issue. Under the facts of the instant case, I agree with the reasoning of *Thomas* and other authorities that a canine sniff at the threshold of an apartment constitutes a search of that apartment, thus involving the Fourth Amendment. Accordingly, I would hold that the canine sniff in the instant case constituted a search.

## WHETHER CANINE SNIFF OF DWELLING REQUIRES WARRANT

The canine sniff in the instant case constituted a search, thus the next issue to be determined is whether that search was reasonable. I agree with the majority to the extent that they determine the search was unreasonable. However, I disagree with their reasoning that a canine sniff may be performed in an apartment hallway for the purpose of detecting contraband inside the dwelling without a warrant based on reasonable, articulable suspicion. Although I recognize that such a warrantless search may be appropriate in circumstances where the expectation of privacy is lower, I believe a search of a dwelling must be conducted pursuant to a warrant issued on the basis of probable cause.

Although the majority recognizes that there is a greater expectation of privacy in a dwelling than in objects of a less intimate or transient nature, the majority nevertheless balances the interests of the individual and the government to conclude that a warrantless intrusion based on reasonable suspicion was the appropriate standard. I disagree with this analysis for two reasons. First, the analysis ignores the principle that searches and seizures without a warrant are presumptively unreasonable. See *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Second, even if a balancing of interests is considered when a canine sniff occurs in circumstances involving a dwelling, I believe the interests of the privacy of the individual outweigh the government's interest in utilizing a canine sniff of a dwelling on anything less than a standard of probable cause.

It cannot be denied that " ' "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." ' " *Payton*, 445 U.S. at 587. As such,

> [t]he Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511. [T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton*, 445 U.S. at 589-90. Accordingly, we have held that a warrantless search must be strictly confined by the exigencies which justify its initiation. *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991), citing *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), and *State v. Dearman*, 92 Wash. App. 630, 962 P.2d 850 (1998), both concluded that a canine sniff of an area which involved a heightened expectation of privacy constituted a search and, therefore, required a warrant based on probable cause. This view is supported by *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987), in which the U.S. Supreme Court was unwilling to expand the plain view doctrine to allow for a warrantless "cursory inspection" or something less than a "full-blown search" within a home on the basis of reasonable suspicion. 480 U.S. at 328. The Court stated: "We are unwilling to send police and judges into a new thicket of Fourth Amendment law, to seek a creature of uncertain description that is neither a 'plain view' inspection nor yet a 'full-blown search.' " 480 U.S. at 328-29.

In the context of canine sniffs, it has been suggested that the area or object searched should be a determining factor in deciding whether a dog sniff must be supported by a warrant based on probable cause. For example, a search of a home or person should receive the greatest level of protection. However, a search of luggage at an airport is necessarily less intrusive because the privacy expectations of passengers are lowered and thus might be permissible based on reasonable suspicion. See Kenneth L. Pollack, *Stretching the* Terry *Doctrine to the Search for Evidence of Crime: Canine Sniffs, State Constitutions, and the Reasonable Suspicion Standard*, 47 Vand. L. Rev. 803 (1994).

Courts that have adopted a reasonable suspicion standard have done so on the basis that under the facts presented, the search was reasonable due to a diminished expectation of privacy in the thing searched, the importance of the law enforcement interests at stake, and the minimal intrusiveness of the dog sniff. *U.S. v. Whitehead*, 849 F.2d 849 (4th Cir. 1988). As a result, most of the cases that adopt a standard of reasonable suspicion involve canine sniffs that occurred in areas outside of an individual's residence and where expectations of privacy were lower. See, e.g., *U.S. v. Whitehead, supra* (passenger train sleeping compartment); *Pooley v. State*, 705 P.2d 1293 (Alaska App. 1985) (checked airline luggage); *People v. May*, 886 P.2d 280 (Colo. 1994) (express mail package); *People v. Unruh*, 713 P.2d 370 (Colo. 1986) (safe in police custody); *State v. Waz*, 240 Conn. 365, 292 A.2d 1217 (1997) (U.S. mail parcel); *State v. Pellicci*, 133 N.H. 523, 580 A.2d 710 (1990) (automobile); *Com. v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987) (rented storage locker in public area). Other courts, however, indicate that the higher standard of probable cause would be applied in cases involving the search of a dwelling where the expectation of privacy was higher. See *U.S. v. Whitehead, supra* (holding that reasonable suspicion standard applied because train sleeping compartment was not analogous to higher expectation of privacy of hotel room). See, also, *State v. Waz, supra* (distinguishing sniff of mail parcel from heightened expectation of privacy seen in *Thomas*); *U.S. v. Roby*, 122 F.3d 1120, 1126 (8th Cir. 1997) (Heaney, J., dissenting) ("[w]hile the use of trained dogs to detect narcotics is justifiable in airports or other public

areas . . . it should not be extended to permit governmental intrusion into the privacy of a hotel room").

Of particular interest is a pair of cases from the Supreme Court of Pennsylvania which illustrate the reasoning behind requiring a warrant based on probable cause when a dwelling or person is the object of the search but perhaps allowing a warrantless search based on reasonable suspicion when the privacy interests are lessened. The majority in the instant case relies on, and provides a lengthy quote from, the Pennsylvania case *Johnston, supra.* In *Johnston,* the Supreme Court of Pennsylvania determined that a canine sniff of a public storage locker did not constitute a search under the U.S. Constitution but did constitute a search under the state constitution. The court then stated that it was unwilling to apply a balancing of interests in order to determine whether a sniff constituted a search because when making that determination, the balance had been struck by the Fourth Amendment itself. However, the court did find the balancing inquiry appropriate in determining whether the canine sniff search necessarily involved the "full-blown" warrant requirements of the Fourth Amendment. The court stated that much of the law enforcement utility of dogs would be lost if "full-blown" warrant procedures were required but also recognized that there had to be some restraint on the use of them. The court then concluded that under the facts of the case, the warrantless search of the locker was permissible because the officers had articulated a reasonable suspicion that drugs might be located in the storage locker and the officers were lawfully situated when they conducted the search.

Although the majority opinion provides a lengthy quote from *Johnston, supra,* it does not cite the later Pennsylvania case of *Com. v. Martin,* 534 Pa. 136, 626 A.2d 556 (1993). In *Martin,* a warrantless canine sniff search was conducted on a satchel carried by an individual. The court stated that the "middle ground" approach taken in *Johnston* was appropriate in that case because the police intrusion was minimal, because the police intrusion was directed solely at contraband drugs, and because much of the utility of the drug detection dogs would be lost if a warrant was required. *Martin,* 534 Pa. at 136, 626 A.2d at 560. The court then noted, however, that the protection of the privacy interest

one has in their person is a principal object of Fourth Amendment protection. Based on this heightened privacy interest, the court held that in order to conduct a canine sniff search on a person, the police must have probable cause to believe that the search will uncover contraband and that any further search of the person beyond that allowed by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), must be pursuant to a warrant, although police could detain the subject for a reasonable time while they sought the warrant. The court further stated:

> We are mindful that government has a compelling interest in eliminating the flow of illegal drugs into our society, and we do not seek to frustrate the effort to rid society of this scourge. But all things are not permissible even in the pursuit of a compelling state interest. The Constitution does not cease to exist merely because the government's interest is compelling. A police state does not arise whenever crime gets out of hand. In fact, all today's holding requires is what police should themselves insist on: probable cause to believe that a crime has been committed or contraband is to be found before there is a police intrusion, beyond that permitted by *Johnston* and *Terry*, into one's person. [A] free society cannot remain free if police may use drug detection dogs or any other crime detection device without restraint. The restraint which we today impose on the use of drug detection dog searches of persons is modest enough, in light of our constitutional mandate.

*Martin*, 534 Pa. at 145, 626 A.2d at 161. Thus, it is clear that the Pennsylvania Supreme Court, when dealing with cases involving a heightened expectation of privacy, requires probable cause.

I believe a rule allowing the warrantless canine search of an apartment based on reasonable suspicion is illogical and improper. Justifications stated by the court in *Com. v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987), and most others for the adoption of a reasonable suspicion standard are (1) in cases involving searches of public places or items such as luggage that are in transit, there is a diminished expectation of privacy in those items; (2) the concern that the utility of drug-detecting dogs will be lost if warrant procedures are required; and (3) the nature of the search is not intrusive, i.e., it does not require the opening of

the object or the entrance to the place being searched and can detect only contraband.

In the instant case, the expectation of privacy is heightened because it involves a residence. The protection of the privacy expectation an individual has of their person and in their dwelling are the core protections of the Fourth Amendment. The majority appears to recognize this but moves away from the issue by referring to Ortiz' expectation of privacy in the hallway. I believe this reasoning is flawed. As previously discussed, the search in the instant case was not a search of the hallway. It was a search specifically aimed at contents *inside* Ortiz' apartment. Additionally, the difference between a public area, or an item in transit, and the hallway of an apartment building is significant. While it is shared by residents of the building and their guests, it does not experience the traffic of an airport or other public area. The existence of a semipublic hallway should not limit the expectation of privacy a person has in their apartment. As one justice has stated, "I do not believe that the Fourth Amendment protects only those persons who can afford to live in a single-family residence with no surrounding common space." *U.S. v. Roby*, 122 F.3d 1120, 1127 (8th Cir. 1997) (Heaney, J., dissenting).

Next, little of the utility of drug detection dogs is lost by requiring a warrant prior to the canine sniff search of a dwelling, although this is a serious concern in cases of airport security and items being sent in the mail. For example, the expectation of privacy in luggage is lower than the expectation of privacy in a dwelling, while the police interests in utilizing canines to detect contraband in luggage is quite high due to the transient nature of the object searched. When a transient item is at issue, officers simply do not have the time or opportunities necessary to observe the owner of the luggage to the point where probable cause could be established. Thus, the use of a canine is of great utility to officers in cases with facts such as those in *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983), but is only one of a number of available investigative tools when a dwelling is concerned.

Finally, although a canine sniff is certainly less intrusive than a "full-blown" search, it is in error to rely on this factor in cases

involving core Fourth Amendment protections. Standing alone, this factor is not strong enough to justify allowing a warrantless canine sniff of a dwelling based on reasonable suspicion. To so hold would be tantamount to stating that the protections of the Fourth Amendment become lessened due to advances in investigative procedures. This is a position that I am not willing to subscribe to. Therefore, I concur in the result.